606 A.2d 968

QUEHANNA–COVINGTON–KARTHAUS AREA AUTHORITY

v.

SANDY CREEK FOREST, INC. et al.

Appeal of Clarence KUBRICK and Charmaine Kubrick,

QUEHANNA–COVINGTON–KARTHAUS AREA AUTHORITY, Girard Township, Karthaus Township and Covington Township

v.

SANDY CREEK FOREST, INC. et al. (Two Cases).

Appeal of SANDY CREEK FOREST, INC.,

Appeal of Robert ROYER et al.,

Commonwealth Court of Pennsylvania.

Argued Dec. 20, 1991.

Decided April 1, 1992.

676

Robert A. Schwartz, for appellants Kubrick and Sandy Creek Forest, Inc., et al.

Jeffrey W. Stover, for appellants, Robert Royer, et al.

Charles E. Gutshall, for appellees.

Before CRAIG, President Judge, and KELLEY, J., and LORD, Senior Judge.

CRAIG, President Judge.

Sandy Creek Forest, Inc. (SCF) and several owners of lots in the Sandy Creek Forest subdivision appeal a decision of the Court of Common Pleas of Clearfield County granting summary judgment in favor of Quehanna–Covington–Karthaus Area Authority (Authority), Girard Township, Karthaus Township and Covington Township (townships) and against SCF and the lot owners.

In this appeal from that determination, SCF and the lot owners raise the following issues: (1) whether the trial court erred in granting summary judgment under the Pennsylvania Sewage Facilities Act (SFA), Act of January 24, 1966, P.L. (1965) 1535, *as amended,* and the Dam Safety Encroachments Act (DSEA), Act of November 26, 1978, P.L. 1375, *as amended,* on the basis of affidavits offered by the Authority and townships; (2) whether the trial court erred in granting summary judgment under the DSEA because questions of material fact exist as to the cause of the alleged changes in the stream bed; (3) whether the trial court erred in applying Covington Township Ordinance No. 83–1 to the SCF subdivision; and (4) whether the actions of the Authority and townships were unreasonable.

The facts as revealed by the pleadings, affidavits and testimony, are as follows.

SCF is a Pennsylvania corporation that engages in the sale and development of real estate. SCF purchased approximately 1139.4 acres of land in Covington township. SCF adopted a plan for the subdivision of the tract, which it recorded in the County Recorder of Deeds Office. At the time SCF recorded the subdivision plan, Covington township had no subdivision ordinance. The plan divided the tract into ninety-nine lots. Each lot is at least ten acres in size. SCF has sold several of the lots and intends to sell the remaining lots.

SCF never sought any approval of the Authority or the township before adopting the subdivision plan or advertising the lots for sale to the general public. The lots are intended for development as residential or recreational homes. No public water supplier or sewage authority serves the subdivision. Therefore, the owners of the lots must get water from on-site wells and must construct on-site sewage disposal systems.

The Authority's reservoir is located on a 11.14 acre tract of land south of the subdivision that is surrounded by lot number ninety-nine. The reservoir supplies drinking water to an elementary school, over 500 families, and approximately 2,000 people in the townships. SCF's development comprises approximately one-fourth of the Sandy Creek Watershed, from which the reservoir derives its water. Sandy Creek and tributaries run through the subdivision and feed into the reservoir.

An old logging road crosses Sandy Creek, which SCF's president and other persons, including lot owners, use to cross the creek. SCF has not constructed bridges or permanent fordings at that crossing. Thus, when vehicles cross the streams, there is a splashing of water, which the Authority alleges creates an increased siltation problem caused by chemical pollutants consisting of microbial contaminants, motor fuels and lubricants that wash off the vehicles crossing the streams. The Authority also alleges

that turbidity levels for Sandy Creek increased during the last three months of 1983, which coincides with increased vehicular traffic within the subdivision.

The Authority alleges that (1) seventy percent of the subdivision has soil that has severe effluent renovation limitations, (2) because of the permeability of the soil, shallow soil thickness, high seasonable water table and steep slopes, on-site septic systems will not renovate sewage physically, chemically or biologically before the sewage reaches the groundwater reservoir, (3) increases in construction on lots not yet developed will increase run-off and may induce soil erosion that could result in an increase in the concentration of suspended solids entering the streams and reservoir, and (4) the introduction of chemicals, including pesticides, on the ground surface of developed lots in the subdivision will result in the rapid transportation of the chemicals to the streams through groundwater interflow.

Based on the above pleadings, the Authority and townships asked for injunctive relief restraining and prohibiting (1) the construction of on-site septic systems, (2) the spreading or depositing of chemicals on the lots, (3) the fording or other crossing of any streams, creeks or tributaries in the subdivision, (4) the development of the lots, (5) any other acts that would tend to pollute or pose a threat to the water supply, and (6) the use of any existing on-site septic systems.

In its answer to the complaint, SCF, asserting laches and estoppel defenses, denied the Authority's averment that the Authority and townships did not have notice of the subdivision proposal. SCF avers that the parties had constructive notice of SCF's intentions when the subdivision plan was recorded and that the Authority and Girard and Karthaus townships had actual knowledge of the subdivision as a result of SCF's activities in the area.

In its new matter, SCF averred that (1) the Authority and townships have failed to exhaust the administrative remedies available under the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* the SFA

and the Clean Streams Law, (2) the Authority and townships have failed to establish that they will suffer irreparable harm from the actions of SCF, (3) the Authority and the townships have failed to allege facts showing any causal connection between SCF's actions and the alleged or anticipated effects of the lot owner's septic systems or use of chemicals on their property on the water supply, (4) laches bars the granting of the injunctive relief requested, and (5) the Authority and townships are estopped from obtaining injunctive relief because they did not pursue the administrative procedure available for the control of land use and development in the subdivision under the MPC, the SFA and the Clean Streams Act.

In its motion for summary judgment, the Authority alleged that SCF failed to obtain subdivision approval by Covington township, in accordance with the township's Ordinance No. 83–3. The Authority averred that no municipal sewage system served the subdivision and that therefore, on-site sewage systems would need to be constructed.

The Authority and townships further averred that SCF has sold lots within the subdivision to other named defendants without obtaining a permit for the construction or installation of on-site sewage systems, contrary to the requirements of Ordinance No. 83–3, that township Ordinance No. 83–1 and the SFA require permits for the installation of any on-site sewage disposal system, and that SCF and the lot owners have not obtained such permits.

The Authority and townships then asserted that section 693.6 of the DSEA, 32 P.S. § 693.6, requires persons to obtain permits from DER before constructing, operating or maintaining any encroachment or obstruction of a watercourse, and that roadways SCF and lot owners established to cross the streams constitute encroachments or obstructions in violation of that law.

The trial court first noted that summary judgment would be appropriate under the SFA if SCF violated the act's permitting provisions, even if SCF's and the other defendants' actions have not caused a degradation of the Authori-

ty's water supply. *Bodnar v. Columbia County Sanitary Administrative Committee*, 51 Pa.Commonwealth Ct. 332, 414 A.2d 735 (1980).

The trial court indicated that, in this case, the SFA sewage permit provisions, which generally apply only to lots that are ten acres or smaller in size, prohibit any person from constructing a sewage system or occupying any building without first obtaining a permit showing compliance with the SFA, because Covington township adopted Ordinance No. 83–1, adopted on May 18, 1983, which specifically eliminated the SFA's exemption for lots that are greater than ten acres in size from the SFA's permitting requirements. Thus, the trial court concluded that the SFA and the township's ordinance require permits for the construction of sewage systems, before persons may occupy a building.

The trial court then considered whether the Authority was entitled to summary relief because SCF had violated the DSEA.

The DSEA applies to any water obstruction or encroachment in, along, across or projecting into any watercourse, floodway or body of water whether temporary or permanent. 32 P.S. § 693.4.

The trial court noted the DSEA's definitions of obstruction and encroachment. The court determined that there was no dispute that SCF had constructed, operated and maintained a water obstruction and encroachment without a DSEA permit, because SCF constructed and used a roadway that crosses Sandy Creek, and because gravel had been dumped into the creek, creating an obstruction.

*1. Are affidavits upon which the trial court relied sufficient to establish the absence of any material issue of fact?*

■ The Authority argues that SCF waived this issue because SCF did not raise a challenge to the trial court's reliance on the affidavits in its brief in opposition to the Authority's motion for summary judgment. This court

agrees with the Authority that SCF waived the issue with regard to the SFA claim, because SCF had the opportunity to raise the issue before the trial court, but did not. *Vaskie v. West American Ins. Co.*, 383 Pa.Superior Ct. 76, 556 A.2d 436 (1989).

However, SCF did challenge the use of affidavits as the sole means to establish a violation of the DSEA. SCF specifically argued in its brief to the trial court that the affidavits were insufficient to establish an absence of material facts relating to the charge of alleged violations under that act. *Post v. Dodd*, 116 Pa.Commonwealth Ct. 114, 541 A.2d 56 (1988) (Even uncontradicted testimony of the moving party and his witnesses will not afford a sufficient basis for summary judgment because the credibility of the testimony is for the jury). Hence, the court will address that argument.

SCF asserts that the testimony of its president, Richard L. Franks, although indicating that he has driven through Sandy Creek, contradicts the affidavits upon which the trial court relied. In his testimony, Franks did state that the only road that crosses Sandy Creek within the subdivision is an old logging road, but that each lot in the subdivision is accessible by a roadway other than that road and that he erected signs prohibiting use of that road and a barricade in an effort to prevent the use of the road crossing Sandy Creek.

Nevertheless, Frank's testimony that he drove through the creek and the responses of the lot-owner defendants supports a finding that SCF's president and the owner defendants drove through the creek. Also, as the Authority notes, there appears to be no dispute that gravel was placed in the creek by someone. A reading of the averments in the light most favorable to the non-moving party reveals that the roadway SCF and the other defendants used was pre-existing. However, none of the parties dispute the fact that the "roadway", including gravel, exists, and is used by the defendants. With those facts in mind, this court must consider whether the trial court

correctly concluded that activities at Sandy Creek constitute an encroachment or obstruction under the DSEA.

As indicated above, an encroachment is "any structure or activity which in any manner changes, expands or diminishes the course, current or cross-section of any watercourse, floodway or body of water." 32 P.S. § 693.3. A water obstruction "[i]ncludes any dike, bridge, culvert, wall, wing wall, fill, pier, wharf, embankment, abutment or other structure located in, along, across or projecting into any watercourse, floodway or body of water." 32 P.S. § 693.3. Those definitions are broad enough to encompass the characteristics of the creek and the activities that have occurred there.

As the trial court noted, if SCF and the lot owners had acted in a responsible manner by building a bridge over the creek, they would need a DSEA permit. The Environmental Hearing Board has recognized that, under section 693.6 of the DSEA, even the construction of a private footbridge requires a DSEA permit. *Board of Supervisors of Springfield Township v. Pennsylvania Department of Environmental Resources and Mozino,* 1982 Env. Hearing Board Reporter 104 (1982). Because SCF does not dispute that gravel has been placed in the creek or that SCF's president and other persons have crossed the creek, this court agrees with the trial court that an obstruction and encroachment exist at the creek.

The DSEA clearly is aimed at terminating conduct associated with the use of obstructions and encroachments as well as the creation of them. The trial court's decision although implicitly determining that SCF is responsible for the obstruction and encroachment goes no further than to declare SCF's and the lot owners' continued non-permitted use of the creek crossing, and the placement of gravel in the creek by anyone, violations of the DSEA.

Similarly, with regard to the issue of on-site sewage systems, the trial court, relying on the affidavits the Authority submitted, concluded that, because the SCF and the lot owners had not obtained permits to install sewage

systems, they were in violation of the SFA and ordinance 83–1's proscription against installing and using on-site sewage systems without permits. The relief the trial court granted, prohibiting SCF or the lot owners from installing or using on-site sewage systems without a permit, is consistent with the SFA's and the ordinance's requirement that persons obtain permits for on-site sewage disposal systems.

*2. Did the trial court err by granting summary judgment under the DSEA because material fact issues exist regarding the causes of the alleged changes in the streambed?*

■ SCF contends that the trial court erred in determining that SCF caused the obstruction and encroachment. Although the averments and testimony upon which the trial court based its decision do not establish who deposited the gravel, the testimony of Mr. Franks and other lot-owner defendants indicate that they have driven their vehicles across the "roadway."

SCF argues that there remains a material factual issue regarding whether or not SCF, the individual lot-owner defendants or some other persons are responsible for the encroachment.

As indicated above, the limited relief the trial court granted, i.e., prohibiting the use of the creek crossing without proper permits, is not contingent upon a finding of a causal connection between SCF or the lot owners' activities and the harm the Authority alleges has occurred and will continue to occur. Therefore, the question of whether SCF is responsible for the encroachment is not material to the disposition of the case.

As indicated above, this court agrees with the Authority's position that the DSEA prohibits any person from operating an obstruction or encroachment. Because SCF and the lot owners do not dispute the fact that they have used the crossing, the defendants, under the DSEA provision that no person may operate an obstruction or encroachment without a permit, are violating that law by continued crossings

without obtaining a permit. Hence, the trial court did not err.

*3. Did the trial court err in considering Covington Township Ordinance No. 83-1?*

■ SCF argues that Ordinance No. 83-1 is not applicable to the subdivision, and that therefore, the SFA doesn't apply because the SFA, at the time SCF filed the subdivision plan, did not apply to lots larger than ten acres in size.

SCF asserts that the language of the SFA in effect at the time the township adopted its ordinance did not vest municipalities with the power to adopt exceptions to the SFA's general application to lots ten acres or smaller in size. SCF argues that the trial court erred in stating that the SFA authorized the enactment of Ordinance 83-1.

SCF contends that Covington Township's comprehensive plan, at the time the subdivision plan was recorded, provided for the use of on-site sewage systems throughout the township.

SCF also relies on the fact that, when it filed its subdivision plan, neither Clearfield County nor Covington Township had adopted subdivision ordinances. SCF asserts that, because it did everything required by law at that time to establish the existence and validity of its subdivision plan, it is entitled to the protections afforded under section 508 of the MPC, 53 P.S. § 10508, which provides that, after a subdivision plan has been approved, no subsequent ordinance can be applied "to adversely affect" the right of the subdivision owner to complete any aspect of the approved development in accordance with the terms of the approval.

SCF argues that Ordinance 83-1 falls within the ambit of the MPC proscription that ordinances adopted after a subdivision plan is filed may not affect an approved plan.

This court agrees with the Authority that SCF waived these arguments because it did not raise them before the trial court. In its brief to the trial court, SCF only asserted that the township had "unclean hands" because it was

aware that SCF filed its subdivision plan before the adoption of the ordinance. SCF made no other arguments regarding the validity of Ordinance 83-1 and its relationship to the SFA.

As the Authority points out, a DER regulation in effect at the time the township adopted the ordinance specifically recognizes municipal ordinances that require permits for rural residential lots larger than ten acres. 25 Pa.Code § 71.41(b). As the Authority notes, that regulatory provision was based on the specific language in the SFA that vests the DER with discretion to adopt rules and regulations setting forth the situations in which it deems a permit is necessary.

*4. Did the trial court err in granting summary judgment because the township has allegedly acted unreasonably?*

■ The lot owners argue that the trial court erred in granting summary judgment because the township has allegedly acted in bad faith in denying permits for the installation of sewage systems. However, if the township has acted in bad faith in the permitting process, the lot owners' proper remedy lies in an action relating to the denial of permits, not in a collateral attack in this case.

### Conclusion

In summary, this court agrees that the trial court correctly granted summary judgment based on its conclusion that SCF and the lot owners have installed and used on-site sewage systems and have used at least one crossing over Sandy Creek in violation of the DSEA and SFA, because they have conducted those activities without obtaining the permits those acts require.

However, the trial court's grant of summary judgment is limited to the relief the Authority requested in the motion for summary judgment, in which it relies entirely upon the failure of SCF and the lot owners to obtain permits. Thus, the additional relief the Authority requested in its original complaint, including a prohibition against "the spreading of

chemicals" and "other acts which would tend to pollute or pose a threat to the integrity of said water supply" is not appropriate, because factual issues that are not related to the non-permitted use and installation of on-site sewage systems and of crossings on Sandy Creek remain.

For example, the Authority's broad request that the trial court enjoin SCF and the lot owners from spreading chemicals that are likely to pollute the water cannot be granted, because fact issues remain as to whether SCF and the lot owners are spreading chemicals or that the use of chemicals is affecting the reservoir. Of course, because this court agrees with the trial court's conclusion that non-permitted on-site sewage systems are prohibited, the spreading of chemicals associated with installing or using such a system is enjoined.

## ORDER

Now, April 1, 1992, the order of the Court of Common Pleas of Clearfield County, dated March 28, 1991, at No. 85–19–EQU, is affirmed.