605 A.2d 465

**LAND ACQUISITION SERVICES, INC. and Concord Resources Group, Appellants,**

v.

**CLARION COUNTY BOARD OF COMMISSIONERS, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 11, 1991.

Decided March 12, 1992.

---

294

Thomas A. Leonard, for appellants.

Blaine Lucas, for appellee.

Before CRAIG, President Judge, and PELLEGRINI, J., and BARRY, Senior Judge.

CRAIG, President Judge.

Land Acquisition Services, Inc. and Concord Resources Group (LAS) appeal a decision of the Court of Common

Pleas of Clarion County that sustained Clarion County's motion to strike LAS' notice of appeal to that court.

The issues LAS raises on appeal are: (1) whether the trial court erred in determining that the enactment procedure mandated by the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202, applies to zoning ordinances but not to other land use ordinances; (2) whether the trial court committed error by basing its decision on a legal theory that the parties did not raise; (3) whether the trial court erred in determining that Clarion County Ordinances Nos. 3–90 and 4–90 are not zoning ordinances; and (4) whether the trial court erred in concluding that Article V–A of the MPC does not prohibit the impact fee imposed by Clarion County Ordinance No. 4–90.

The procedural history of this case is as follows. On November 15, 1990, LAS filed a notice of appeal with the common pleas court challenging the validity of Clarion County Ordinances Nos. 3–90 and 4–90 on the ground that the county's board of commissioners did not comply with the MPC's procedural requirements for the adoption of zoning and land use ordinances.

The board moved to strike the appeal, asserting that the ordinances are neither zoning nor land use ordinances to which the MPC applies. The trial court granted the motion, concluding (1) that, under section 909.1(a)(2) of the MPC, common pleas courts are vested with jurisdiction over appeals challenging alleged defects in the enactment of zoning ordinances, but not other land use ordinances and (2) that the ordinances at issue are land use ordinances, but not zoning ordinances and hence, that the court lacked jurisdiction to review alleged defects in the enactment process.

*1. Land use and zoning ordinances under the MPC*

■ Section 909.1(a)(2) of the MPC, 53 P.S. § 10909.-1(a)(2), is the relevant starting point for analysis. It reads in pertinent part as follows:

Jurisdiction.—(a) The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:

(1) Substantive challenges to the validity of any land use ordinance, except those brought before the governing body pursuant to sections 609.1 and 916.1(a)(2).

(2) *Challenges* to the validity of *a land use ordinance raising* procedural questions or *alleged defects in the process of enactment* or adoption which challenges shall be raised by an appeal taken within 30 days after the effective date of said ordinance. Where the ordinance appealed from is the *initial zoning ordinance* of the municipality *and a zoning hearing board has not been previously established, the appeal* raising procedural questions *shall be taken directly to court.* (Emphasis added.)

▮ Initially, this court agrees with LAS' argument that the last sentence of subsection 909.1(a)(2) must be interpreted as providing for court review of enactment procedure compliance as to land use ordinances as well as zoning ordinances, when no zoning board exists because no zoning ordinance has been adopted.[1]

Clarion County has never enacted any county zoning ordinance and therefore has never established any zoning hearing board for the county.

---

**1.** The second issue LAS raises is that the trial court improperly based his decision on a legal issue or theory that none of the parties raised—that the trial court lacked jurisdiction because section 909.1(a)(2) vests it with jurisdiction only in appeals challenging the enactment process of zoning ordinances, but not land use ordinances. A court may not address issues the parties have not raised before it; however, there is a distinction between issues that have not been raised and resolving the issues that have properly been raised based upon a legal theory that the parties have not considered. In this case, the general issue before the trial court was whether or not the ordinances at issue were subject to the procedural mandates of the MPC, and whether the trial court had subject matter jurisdiction to review the question. The trial court did not raise a new issue, but only considered an alternative legal basis to resolve the issue. Furthermore, a court may raise jurisdictional issues at any time during a proceeding.

■ The purpose of the second sentence of subsection 909.1(a)(2) is to provide a remedy when a municipality has no zoning hearing board to act as the adjudicatory body to resolve questions relating to the enactment procedure of an ordinance under the MPC.

■ This interpretation is unavoidable because, without a zoning hearing board, the court of common pleas is the only independent tribunal available. In accordance with the rules of statutory construction, courts, when attempting to ascertain the intention of the General Assembly, must assume that the legislature did not "intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S. § 1922(1).

Hence, the phrase "initial zoning ordinance" must be given a broader meaning because the first sentence of the subsection embraces all land use ordinances. In this MPC provision, the second sentence is meant to encompass a municipality's first ordinance relating to all facets of land regulation which the MPC empowers a municipality to adopt. Thus, when "a zoning hearing board has not been previously established" challenges to the process by which an ordinance is adopted are to be reviewed by an appeal to the trial court.

■ Section 107(b) of the MPC defines land use as "any ordinance or map adopted pursuant to the authority granted in Articles IV, V, VI, VII." 53 P.S. § 10107(b).

Thus, ordinances relating to an official map (Article IV), subdivision regulation (Article V), zoning (Article VI), or planned residential developments (Article VII), which the MPC empowers a municipality to enact, are the types of ordinances to which section 909.1(a)(2) applies.

Hence, the common pleas courts have jurisdiction under this section in appeals alleging defects in the enactment process of zoning and other land use ordinances whenever no zoning hearing board exists.

## 2. Does Clarion County Ordinance No. 3–90 constitute a land use or zoning ordinance under the MPC?

This court does not agree with LAS that Ordinance 3–90 falls within the MPC's meaning of the terms "zoning" or "land use."

Relying on the Supreme Court's decision in *Hopewell Township Board of Supervisors v. Golla*, 499 Pa. 246, 452 A.2d 1337 (1982), LAS first argues that, if the ordinance is a land use ordinance other than a zoning ordinance, such an ordinance is nevertheless cognizable under MPC Article VI, relating to zoning regulations.

*Hopewell* involved a 140 acre parcel of agricultural land that the owners sought to subdivide into fourteen ten-acre parcels. The landowners argued that the MPC exempted from municipal zoning requirements agricultural parcels of ten or greater acres. The Pennsylvania Supreme Court concluded that, although Article V of the MPC exempted such parcels from the application of Article V subdivision regulations, no similar exemption existed in Article VI of the MPC, and thus, municipalities had the power to apply zoning regulations to the development of such proposed subdivisions.

The court recognized that Article V ordinances relate to the *process* of land development, whereas "Article VI provides for regulation of the areas of land that may be applied to particular uses." 499 Pa. at 251–2, 452 A.2d at 1340. As that court noted, zoning ordinances "may permit, prohibit, regulate and determine ... uses of land ... size, height, bulk, location ... areas of dimensions of land ... to be occupied by structures ... as well as areas ... and other open areas and distances to be left unoccupied by uses and structures [and d]ensity of population and intensity of use." 499 Pa. at 252, 452 A.2d at 1340, Section 603 of the MPC, 53 P.S. § 10603.

■ *Hopewell* therefore stands only for the proposition that, although a municipality's subdivision ordinances may not regulate the subdivision of tracts of property that

exceed a particular size, the municipality's zoning provisions nevertheless are applicable to the development of the land. Thus, *Hopewell*'s holding means only that the development of the hazardous waste site in this case may be subject to specific zoning restrictions in addition to the requirements of Ordinance Nos. 3–90 and 4–90.

■ Clearly, the ordinance here does not relate to an official map, a subdivision or a planned residential development. The only other remaining "land use" ordinance category to which the MPC applies is zoning ordinances.

LAS argues that the trial court erred in concluding that, because zoning generally involves the division of a municipality into zones, the ordinance does not constitute a zoning ordinance.

LAS points to the preamble of the ordinance, which refers to the public health, safety and general welfare, and the quality of the environment, as an indication that the board intended the ordinance to regulate land use under the police power granted to municipalities by the MPC. LAS cites *Nalbone v. Borough of Youngsville*, 104 Pa.Commonwealth Ct. 623, 522 A.2d 1173 (1987), which involved an ordinance relating to oil production districts in that borough. The court there concluded that, based on the language of the ordinance's preamble, which spoke of the health and environment and provided for the issuance of oil and gas drilling permits, the ordinance regulated land use, a primary purpose of zoning regulation.

LAS also points out that the ordinance at issue in *Nalbone* regulated the operational aspects of an activity, in the same way the ordinance at issue here regulates the operational aspects of the proposed hazardous waste facility. Thus, LAS argues that the trial court erred in reaching its decision on the basis of its characterization of the ordinance as primarily regulating operational aspects of the hazardous waste facility.

However, the ordinance at issue in *Nalbone* is distinguishable from the ordinance at issue in this case. The

ordinance at issue in the *Nalbone* decision *established* an oil *district* and required permits as a prerequisite for the drilling and other treatment of oil and gas wells. 104 Pa.Commonwealth Ct. at 627, 522 A.2d at 1174. The ordinances in that case included zoning concepts, such as designating an area or zone in the municipality for a particular use and requiring a conditional permit for the use. However, the *Nalbone* decision does not clearly establish the extent to which those ordinances regulated the operational aspects of oil and gas drilling, as compared to the ordinances here.

LAS also argues that the county intended Ordinance 3–90 to be a zoning ordinance, pointing out that the ordinance states that it will not apply to municipalities that have adopted a hazardous waste ordinance by special ordinance or by zoning ordinance. However, the stated intent of a municipality is not controlling with respect to the question of whether the substance of an ordinance renders it a zoning ordinance.

LAS argues that its position is supported by the fact that the ordinance has zoning characteristics, including: (1) designating industrial zones as the sole location for waste sites; (2) requiring minimum distance of one mile from residential dwellings; (3) requiring waste sites to be surrounded by a six foot chain link fence constructed in compliance with local zoning ordinances; (4) precluding waste site location in prime or existing agricultural lands; (5) mandating certain dimensional requirements and a buffer zone; and (6) requiring the submission of the waste proposal plan to the planning commission.

Thus, LAS argues that the ordinance includes conditions that relate to the use of land as well as operational aspects of a hazardous waste facility, and therefore constitutes a zoning ordinance.

Recently, this court decided the case of *IA Construction Corporation v. Township of Bradford,* 143 Pa.Commonwealth Ct. 302, 598 A.2d 1347 (1991), which involved a

challenge to an ordinance Bradford Township adopted that extended the scope of an ordinance regulating and prohibiting the dumping and depositing of ashes, garbage, rubbish and other refuse materials within the township, to encompass hazardous waste, residual waste, infectious and chemotherapeutic waste, municipal waste, special handling waste, sludge and other related materials.

IA challenged the township's adoption of the ordinance, claiming that the ordinance constituted a de facto zoning ordinance which was invalid because the township did not comply with the procedural mandates of the MPC.

In that case, the trial court concluded that the ordinance was a valid exercise of the township's police power under section 702 of the Second Class Township Code[2]. In its appeal to this court IA argued that the township had actually created a zoning ordinance because several provisions of the ordinance contained zoning and land use principles.

The provisions of the ordinance which IA argued constituted zoning regulation included requirements regarding mandatory setbacks for solid waste management activities, locating solid waste facilities at least three miles from ground water, and providing that vehicles hauling solid waste must use roads at least 900 feet outside the township.

The court noted that, although "mandated dimensional separations are setbacks, ... setbacks are not exclusively hallmarks of zoning. The distinctive characteristic of zoning involves zones, as well illustrated by § 605 of the MPC, 53 P.S. § 10605...." (143 Pa.Commonwealth Ct. at 307, 598 A.2d at 1349.)

The court concluded that the ordinance did not constitute a zoning ordinance because the overall purpose of the ordinance was to regulate solid waste *activity*, and "none of the sections of the ordinance [went] beyond the scope of that goal". (143 Pa.Commonwealth Ct. at 308, 598 A.2d at 1350.)

2. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 65708.

The ordinance at issue here is similar to the one in *IA Construction.* The purpose of the present ordinance is to regulate and control the operational aspects of hazardous waste disposal. Although the components of the ordinance which LAS argues render the ordinances zoning ordinances are used in zoning and land use legislation, they are not, as we said in *IA,* the exclusive "hallmarks of zoning."

Because the ordinance at issue here has as its primary objective the regulation of hazardous waste disposal activity, and because the terms of the ordinance go no further than the "scope of that goal," our conclusion is that the ordinance is not a zoning regulation.

### 3. *Validity of Ordinance No. 4–90*

■ One cannot dispute the fact that Ordinance 4–90 establishes an "impact fee," which is precisely how the ordinance itself labels the levy. As LAS notes, the MPC, in section 503–A, 53 P.S. § 10503A, provides that

(a) The governing body of each municipality other than a county, in accordance with the conditions and procedures set forth in this act, may enact ... impact fee ordinances, and, thereafter may establish at the time of municipal approval of any new development or subdivision, the amount of an impact fee for any of the offsite public transportation capital improvements authorized by this act as a condition precedent to final plat approval under the municipality's subdivision and land development ordinance.

. . . . .

(b) No municipality shall have the power to require as a condition for approval of a land development or subdivision application the construction, dedication or payment of any offsite improvements or capital expenditures of any nature whatsoever or impose any contribution in lieu thereof, exaction fee, or any connection, tapping or similar fee except as may be specifically authorized under this act.

. . . . .

(c) No municipality may levy an impact fee prior to the enactment of a municipal impact fee ordinance adopted in accordance with the procedures set forth in this act, except as may be specifically authorized by the provisions of this act. A transportation impact fee shall be imposed by a municipality within a service area or areas only where such fees have been determined and imposed pursuant to the standards, provisions and procedures set forth herein.

Thus, the legislature has indicated in this provision that a municipality's power to assess impact fees is limited under section 503–A(a), which vests municipalities *other than counties* with the power to enact impact fee ordinances that solely reflect the costs associated with capital transportation improvements.

 However, Ordinance 4–90 provides for the imposition of impact fees to compensate the county for decreases in property values caused by the development of hazardous waste sites. Although the ordinance appears to go beyond the scope of impact fee ordinances which the MPC empowers municipalities to adopt, it is nevertheless an impact fee ordinance.

The questionable content of Ordinance 4–90—relating impact fee income to revenue purposes broader than the capital transportation cost purpose approved by the MPC—does not negate the point that it remains an impact fee ordinance. Because Pennsylvania law nowhere contains any other authorization of impact fees ordinances, the MPC governs Ordinance 4–90.

No statutory authority exists for Clarion County to enact an impact fee ordinance, because counties are expressly excluded from the terms of the MPC's enabling provisions.

Moreover, if we assume that the county did have the power to adopt the impact fee ordinance, the county would have been required to follow the only enabling provision for impact fee charges, which is the MPC, and comply with the

MPC's procedural requirements for the enactment of ordinances.

Because the county has attempted to go beyond its statutory powers and has even ignored the MPC's procedural requirements, this court concludes that the trial court erred in upholding Ordinance No. 4–90.

## *Conclusion*

Accordingly, the trial court's decision is affirmed with regard to its conclusion that Ordinance No. 3–90 is not subject to the MPC's ordinance enactment requirements; however, with regard to Ordinance No. 4–90, the impact fee ordinance, this court reverses the trial court's decision and holds Ordinance No. 4–90 to be a nullity.

## ORDER

NOW, March 12, 1992, the order of the Court of Common Pleas of Clarion County, at No. 884 CD 1990, dated March 22, 1991, is affirmed with regard to its conclusion that Ordinance No. 3–90 is not subject to the MPC's enactment requirements, but is reversed with regard to Ordinance No. 4–90.

BARRY, Senior Judge, concurring.

This member of the Court agrees that Ordinance No. 3–90 is not a zoning ordinance and further that Ordinance No. 4–90, which establishes an impact fee, is a nullity, since counties do not have the power to pass such an ordinance. However, the majority opinion is incorrect when it states in dicta that,

> The questionable content of Ordinance 4–90—relating impact fee income to revenue purposes broader than the capital transportation cost purpose approved by the MPC—does not negate the point that it remains an impact fee ordinance. Because Pennsylvania law no where contains any other authorization of impact fee ordinances, the MPC governs Ordinance 4–90.

It is respectfully suggested that this discussion is unnecessary to a resolution of the problem in this case. The majority opinion is incorrect when it states that, since there is no other authorization to enact impact fee ordinances, the MPC must govern Ordinance No. 4–90. The mere fact that the MPC talks about impact fee ordinances in connection with only capital transportation improvements, does not widen its scope to include any impact fee ordinance. Therefore, if comment were appropriate on this aspect of the ordinance the Court should conclude that there is no power unless it is specifically given by the Legislature to enact an impact fee ordinance other than for capital transportation improvements.