613 A.2d 183

Otho M. OTTE and Irene Otte and Clarence
Kubrick and Charmaine Kubrick

v.

COVINGTON TOWNSHIP ROAD SUPERVISORS.

Appeal of Clarence KUBRICK and Charmaine
Kubrick, Appellants.

Otho M. OTTE and Irene Otte and Clarence
Kubrick and Charmaine Kubrick

v.

COVINGTON TOWNSHIP ROAD SUPERVISORS.

Appeal of Otho M. OTTE and Irene Otte, Appellants.

Commonwealth Court of Pennsylvania.

Argued April 10, 1992.

Decided July 29, 1992.

Stanley R. Geary, for appellants.

Barbara H. Schickling, for appellees.

Before DOYLE and FRIEDMAN, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Otho M. and Irene Otte and Clarence and Charmaine Kubrick (collectively, Appellants) appeal from an order of the Court of Common Pleas of Clearfield County denying their appeal from the Covington Township Road Supervisors' (Supervisors) rejection of Appellants' permit applications for on-lot sewage treatment systems. We reverse.

In 1983, Appellants purchased lots 49, 50 and 53 in the Sandy Creek Forest Development (Sandy Creek), located in Covington Township, Clearfield County.[1] Under section 7(b)(4) of the Pennsylvania Sewage Facilities Act (Act), Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. § 750.7(b)(4), a sewage facilities plan revision must be submitted to and approved by the Department of Environmental Resources (DER) for new subdivisions such as Sandy Creek; otherwise, issuance of permits for on-lot sewage treatment systems is prohibited. Sandy Creek's developer never submitted plan revisions to DER; therefore, unless one of the

---

1. The Ottes acquired lots 49 and 50 in July 1983 and the Kubricks purchased lot 53 in August of that year; each lot is slightly larger than ten acres.

section 7(b)(5) exceptions to the Act, 35 P.S. § 750.7(b)(5), applies, on-lot sewage systems are forbidden in the development.[2]

In September 1987, Appellants submitted a request to DER for an exception to the on-lot sewage permit ban for lots 49, 50 and 53, pursuant to section 7(b)(5)(i) of the Act. By letter dated December 1, 1989, DER notified the Supervisors that it had granted the exception to Appellants. The Supervisors did not appeal to the Environmental Hearing Board (EHB) from DER's action.

Having obtained the exceptions, Appellants next submitted on-lot sewage permit applications to the Clearfield County Sewage Committee, which had been delegated the authority to issue these permits by Township Ordinance No. 83–1. Prior to Appellants' submission of permit applications, lots 49, 50 and 53 were inspected by a Township sewage enforcement officer, who found the lots satisfied all DER requirements. The permit applications themselves were also reviewed by an enforcement officer, and found to meet DER regulations. Nevertheless, the Supervisors denied the permit applications.

Appellants appealed the permit denial to the court of common pleas. After the appeal was filed, but prior to the hearing, the lots were re-evaluated by a civil engineer and certified sewage enforcement officer, who determined that each lot had a suitable alternate location in which to install a backup sewage treatment facility, comporting with DER requirements, in the event that the original system failed.

2. Sections 7(b)(5) of the Act provides in pertinent part as follows: (5) The limitations on permit issuance contained in paragraph (4) [requiring submission and approval of sewage facilities plan revisions before local agencies may issue permits for proposed sewage systems] of this subsection shall not apply:
. . . .
    (i) to those sections of the municipality where the department [DER] finds that the zoning or applicable restrictive covenants running with the land and enforceable by other grantees in a subdivision provide for single family residential lots of one acre or more or the proportionate equivalent acreage for multiple family or commercial uses and provided that a replacement system could be installed on the lot in the event that the original system failed. . . .

■ On April 4, 1991, following a hearing *de novo,* the trial judge issued an order denying Appellants' appeal. The order was not accompanied by an opinion, but rather, provided that judgment was entered in accordance with the opinion to be entered in *Quehanna–Covington–Karthaus Area Authority, et al. v. Sandy Creek Forest, Inc., et al.,* No. 85-19-EQU.[3] Alleging that the trial court abused its discretion and committed legal error, Appellants now appeal to this court.[4]

First, Appellants argue that the trial court erred by failing to preclude the Supervisors from collaterally attacking the DER's grant of an exception to the sewage permit ban because the Supervisors failed to appeal the DER action to the EHB. Appellants assert that the doctrine of exhaustion of administrative remedies requires that where an adequate statutory remedy exists, it is exclusive. *Commonwealth v. Derry Township,* 466 Pa. 31, 351 A.2d 606 (1976); *Department of*

---

**3.** This was an equity action brought by the Quehanna–Covington–Karthaus Area Authority and the Clearfield County Townships of Quehanna, Covington and Karthaus against Sandy Creek Forest, Inc. and the individual lot owners in the Sandy Creek development. It sought to enjoin the lot owners from developing their lots on grounds that this development would pollute a public water supply reservoir. In response to the townships' motion for summary judgment, the trial court enjoined lot owners from constructing or occupying buildings, or installing or operating sewage facilities on their lots without first obtaining sewage permits.

Sandy Creek Forest, Inc. and several lot owners appealed from this decision, which we affirmed in *Quehanna–Covington–Karthaus Area Authority, et al. v. Sandy Creek Forest, Inc., et al.,* 146 Pa.Commonwealth Ct. 675, 606 A.2d 968 (1992). However, our affirmance of *Quehanna* does not affect our decision here.

**4.** A hearing on Appellants' permit application was held before the Supervisors, acting as a local agency as defined in section 101 of the Local Agency Law, 2 Pa.C.S. § 101; *Kretzler v. Ohio Township,* 14 Pa.Commonwealth Ct. 236, 322 A.2d 157 (1974). However, because no record was made, the trial court heard the appeal *de novo,* pursuant to section 754(a) of the Local Agency Law, 2 Pa.C.S. § 754(a). In a case brought pursuant to Local Agency Law, where the trial court has held a *de novo* hearing, our scope of review is limited to a determination of whether constitutional rights were violated or whether the trial court committed a manifest abuse of discretion or an error of law. *Lawrence Township Appeal,* 117 Pa.Commonwealth Ct. 508, 544 A.2d 1070 (1988).

*Environmental Resources v. Williams,* 57 Pa.Commonwealth Ct. 8, 425 A.2d 871 (1981). Relying on *Derry* and *Williams,* Appellants contend that if the Supervisors had wished to object to the DER's action, the only proper recourse would have been to appeal to the EHB pursuant to section 4(a) of the Environmental Hearing Board Act.[5] However, the Supervisors, after being advised by letter of the DER's grant of an exception for Appellants' lots, did not perfect a timely appeal in accordance with EHB regulations.[6] Therefore, Appellants argue that the DER action became final under section 4(c) of the Environmental Hearing Board Act, 35 P.S. § 7514(c), binding the Supervisors and foreclosing any attacks on the DER action in further proceedings.

The Supervisors disagree that their failure to appeal DER's action to the EHB bars their challenge here. The Supervisors distinguish the cases relied on by the Appellants, noting that in both *Derry* and *Williams,* the DER orders included clear notice of the opportunity for appeal; in *Derry,* the DER order even enclosed a copy of the DER rules of practice and procedure, detailing when and how to perfect appeals and stating that failure to appeal would result in the order becoming final.

5. Act of July 13, 1988, P.L. 530, 35 P.S. § 7514(a). Section 4 of the Environmental Hearing Board Act states in pertinent part:
> (a) The board has the power and duty to hold hearings and issue adjudications under 2 Pa.C.S.Ch. 5 Subch. A (relating to practice and procedure of Commonwealth agencies) on orders, permits, licenses or decisions of the department.
> . . . .
> (c) The department may take an action initially without regard to 2 Pa.C.S.Ch. 5 Subch. A, but no action of the department adversely affecting a person shall be final as to that person until the person has had the opportunity to appeal the action to the board under subsection (g). If a person has not perfected an appeal in accordance with the regulations of the board, the department's action shall be final as to the person.

6. Pursuant to section 16(b) of the Sewage Facilities Act, 35 P.S. § 750.16(b), and section 21.52 of the EHB regulations, 25 Pa.Code § 21.52, appeals of DER actions under the Sewage Facilities Act must be filed with the EHB within thirty (30) days of receipt of notice of the action.

In contrast, the Supervisors claim that they received only a confusing letter from DER, which did nothing to advise them on how to proceed and gave no indication that by failing to act, the Supervisors would relinquish their role in the permitting process. In fact, despite Appellants' argument to the contrary, the Supervisors assert that there was no need for them to file an objection with the EHB because the DER, by granting Appellants' request for exceptions, did not intend to diminish the Supervisors' ability to protect the public water supply by requiring additional tests and information before issuing on-lot sewage permits to Appellants.[7]

7. The letter sent by DER could be interpreted only to override the sewage permit application ban and so allow Appellants to submit their permit applications, but not to fully usurp the Supervisors' responsibility. However, the letter directed the Supervisors to review the applications solely for their compliance with the requirements of 25 Pa.Code Chapter 73 and any applicable local ordinances. A sewage enforcement officer for Covington Township testified that he examined the lots, and that each lot, as well as the sewage permit application prepared for each lot, satisfied the DER regulations. (R.R. 27–29). There are no applicable local ordinances. The text of the DER letter of December 1, 1989 reads as follows:

Gentlemen:

I am writing township officials regarding recent department activity relative to the Sandy Creek Forest subdivision. As I am sure you recall, lack of a properly submitted and approved sewage facilities plan revision for this development has prevented the issuance of on-lot sewage permits throughout Sandy Creek Forest. Customarily, the developer provides needed planning data for both municipality and the department to judge the suitability of any particular proposal. The Sandy Creek Forest developer, Mr. Franks, has never provided this data.

Some time ago Attorney Stan Geary, representing the owners of Lots 49, 50 and 53, at Sandy Creek Forest, requested the lifting of permit limitations by the department based upon the exceptions criteria as outlined in the Sewage Facilities Act (Section 7[b][5] ). The department will be notifying Mr. Geary that the exception criteria are inappropriate for new land development proposals which have not been incorporated into the existing approved municipal sewage facilities plan.

Department staff have been in contact with Mr. Geary for some time, and due to problems with internal communications, Mr. Geary has spent considerable effort to develop a specific proposal to qualify for the exceptions to permit limitations. In fact, representations were made to Mr. Geary regarding the acceptability of his proposal.

As I stated, exceptions to permit limitations are not applicable when new land developments are unaddressed in a municipal sewage facilities plan. This should have been clearly communicated to Mr.

■ Rather, the main thrust of the Supervisors' argument is that their broad responsibility to protect public health and welfare, entitled them to request additional information from Appellants before issuing permits, where they felt that the sewage systems posed a threat to the local water supply. *D'Amico v. Board of Supervisors, Township of Alsace*, 106 Pa.Commonwealth Ct. 411, 526 A.2d 479 (1987). For this reason, they demanded that Appellants test for back-up sewage facility sites before they would consider the permit applications to be complete.[8] The Supervisors also claim that the

> Geary immediately upon receipt of his request. However, given the representations made to Mr. Geary, the department is obliged to notify Covington Township officials and your sewage enforcement officer that applications Mr. Geary's clients may submit for *on-lot sewage permits for lots 49 and 50 (owned by Otto and Irene Otte) and lot 53 (owned by Clarence, Charmaine and Robert Kublick [sic] ) may be reviewed based solely on compliance with 25 Pa.Code Chapter 73 and any applicable local ordinances.* The Department's willingness to undertake this step is limited to lots 49, 50 and 53.
>
> Be advised that this determination applies only to these three lots. The department remains committed to ensure that proper sewage facilities planning is accomplished before permit actions are considered at Sandy Creek Forest. Township officials and your sewage enforcement officer are prohibited from permit considerations for all lots in Sandy Creek Forest other than Lots 49, 50 and 53 until proper sewage facilities planning is completed.
>
> (R.R. 16). (Emphasis added).

8. Although these tests were performed, the Supervisors now argue that testing was done only after the appeal before the trial court, rather than when first requested. Further, the Supervisors argue that the Township sewage enforcement officer was not present during the testing, nor were the results provided prior to the hearing, so that they might determine their adequacy. *We are not swayed by this argument.*

First, we note that Appellants provided the Supervisors with information prior to the trial court hearing by submitting a letter from David R. Stiffler, a professional engineer, at the unrecorded hearing before the Supervisors on Appellants' sewage permit applications. That letter stated that, in Stiffler's professional opinion, each lot had an adequate site for an alternative system. (R.R. 21). Additionally, we note that because the hearing before the trial court was *de novo*, we must review the trial judge's decision rather than the Supervisors' decision; at the trial court hearing, Appellants presented uncontroverted testimony from their expert of the availability of a backup site on each lot. The Supervisors offered no statute or regulation requiring the presence of a sewage enforcement officer during testing on Appellants' lots, nor did they offer evidence to refute the evidence presented by Appellants'

DER regulations themselves, at 25 Pa.Code § 71.43(b)(2), affirm their right to require these test results as part of the sewage permit applications. We disagree.

First, we feel that the Supervisors' reliance on *D'Amico* is misplaced here. In *D'Amico,* we upheld the right of the Board of Supervisors of Alsace Township to request additional reasonable information from an applicant before granting a sewage permit. However, in *D'Amico,* unlike the situation here, the DER had taken no action. Implicit in the DER's grant of Appellants' request for an exception to the sewage permit ban, was DER's determination that a plan revision was not required for Appellants' lots and that each lot contained a suitable site for a backup system. Because it is DER which properly makes this determination, we analogize the present case to our decision in *Voortman v. Bucks County Zoning Hearing Board,* 21 Pa.Commonwealth Ct. 129, 343 A.2d 393 (1975), in which we stated:

> Finally with respect to the impact of the grant of the variance upon the public health and welfare of the community, we must conclude that the zoning board exceeded its jurisdiction by, in effect, collaterally attacking the determinations made by the Department of Health in granting the on-site septic system permit. That agency has primary authority over such determinations, and it is not for the zoning board to enforce the technical engineering regulations of that agency even though it may be convinced that a permit was improvidently granted.

*Id.* at 136, 343 A.2d at 397.

The Supervisors also argue that their right to request additional information on backup sites before issuing Appellants' sewage permits is supported by 25 Pa.Code § 71.-43(b)(2). However, chapter 25 of the Pennsylvania Code does not include this section.[9] Section 72.24(b) deals with the local agency's need for additional information by providing:

expert. On the contrary, their own expert testified that the lots met the minimum standards set by DER regulations. (R.R. 148).

**9.** This section was cited and quoted in *D'Amico.* It is likely then that the Supervisors relied on that source to confirm the section's existence.

(b) The local agency may require additional information consistent with the act needed to assure that the system or the site will comply with the requirements of the act and this part.

This section does not advance the Supervisors' position because it authorizes local agencies to require additional information only when needed to assure compliance with the Act and DER regulations. The portion of the Act concerned with backup sites is section 7(b)(5)(i), the same section under which DER granted Appellants' exception. Therefore DER, through its grant of an exception, has already determined the availability of backup systems for Appellants' lots and there was no need for further information on this point.

In fact, Appellants argue that the issuance of permits for on-lot sewage treatment facilities are fully regulated by the Act and DER regulations at 25 Pa.Code Chapters 71, 72 and 73. Appellants contend that because all of these requirements were satisfied, as apparent from the DER grant of exceptions and the testimony of the sewage enforcement officer, it was mandatory that the permit be issued. 25 Pa.Code § 72.25(a).[10] Moreover, Appellants contend that the Supervisors had no authority to intervene where Township Ordinance 83–1 delegates administrative responsibility for such permits to the Clearfield County Sewage Committee, and where section 8 of the Act, 35 P.S. § 750.8, provides that permits shall be issued or denied by sewage enforcement officers.

The Supervisors concede that the Clearfield County Sewage Committee had the authority to administer the Act, using the County Sewage Enforcement Officer to review permit applications and determine the suitability of lots for on-lot sewage disposal systems. Nevertheless, the Supervisors insist that

However, *D'Amico* was written in 1987, and although Appellants' lots were purchased in that year, the letter from the DER to the Supervisors was dated December 1989, long after January 9, 1987, when chapter 71 sections were reserved, to be replaced later. Permit application provisions are now found in chapter 72.

10. Section 72.25(a) of DER's sewage facilities regulations provides:
   (a) A permit shall be issued when the local agency has determined that the application is complete and meets the requirements of the act and this part.

the ultimate responsibility for the health and welfare of Township residents is theirs, making their request for additional information regarding alternate sites appropriate. Indeed, the welfare of local residents should be a primary concern, and DER regulations, as previously noted, recognize that *when additional information is needed*, local agencies can require it. Because DER already had addressed the Supervisors' concerns when it granted an exception to the sewage permit ban for Appellants' lots, there was no such need here.

Finally, Appellants contend that *Quehanna* provides no grounds for the trial court's denial of their appeal. Appellants argue that this opinion concerned only the problems caused by existing unauthorized and *unpermitted* sewage systems, enjoining lot owners from installing systems *unless and until* permits were issued in accordance with the Act and DER regulations. Appellants assert that this provided no basis to deny permit applications for systems which would meet these standards, and so be *permitted;* rather, *Quehanna* would allow the installation of such systems.

The Supervisors counter this argument by conceding that, while *Quehanna* does not address the issue of Appellants' sewage permits directly, it does address the Supervisors' concerns which led to their request for alternate site information. The Supervisors contend that the result in *Quehanna* expresses the trial court's belief that further development of Sandy Creek threatened the health of area families and should not be permitted.

We commend the trial court for voicing concerns about the welfare of local residents; however, where these concerns are unwarranted, they cannot provide grounds for denying Appellants' Local Agency Law appeal. The tests which the Supervisors demanded have now been performed and the results are available for analysis. Because the proposed sewage systems meet all DER and Township requirements, entitling Appellants to permits, and nothing in *Quehanna* precludes issuance of sewage permits where DER requirements are satisfied, *Quehanna's* injunction against installation of unpermitted sys-

tems offers no basis to deny Appellants the opportunity to utilize their property by installing permitted facilities.

Accordingly, we reverse.

## ORDER

AND NOW, this 29th day of July, 1992, the order of the Court of Common Pleas of Clearfield County, dated April 4, 1991, is reversed. We direct that the Covington Township Road Supervisors issue on-lot sewage treatment system permits for lots 49, 50 and 53 of the Sandy Creek Forest Development.