**Robert TAYLOR, Appellant**

v.

**HARMONY TOWNSHIP BOARD OF COMMISSIONERS.**

Commonwealth Court of Pennsylvania.

Argued May 3, 2004.

Decided June 10, 2004.

David L. Gropp, Beaver, for appellant.

Jeff Hollowood, Sewickley, for appellee.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Robert Taylor (Taylor) appeals an order of the Court of Common Pleas of Beaver County (trial court) dismissing his appeal from the adjudication issued by the Harmony Township Board of Commissioners (Board) denying his application for a logging permit.

Ray and Lydia Yoder (collectively, Yoder) currently own 1100 Valley Road (the Property). The Property is located in Harmony Township (Township), a First Class Township in Beaver County. Under the Township's local Ordinance No. 335 (Ordinance 335), effective November 19, 2001, "no timber harvesting shall take place in areas determined by the Engineer, with reference to published or commonly accepted guidelines, to be landslide-prone or flood-prone." (Section 4C of Ordinance 335, Reproduced Record at 41a). Yoder has executed an unrecorded deed to Taylor for the Property, the sale of which was conditioned on Township approval of a logging permit for the Property.

In November, 2001, the Township's Code Enforcement Officer, Frank Presto (Code Enforcement Officer), met with Taylor and advised him that there were potential problems with the Property because it was in a landslide-prone area. The Code Enforcement Officer gave Taylor a copy of Ordinance 335 (Reproduced Record at 41a).

On September 30, 2002, the Code Enforcement Officer was told by neighbors that they heard men with chainsaws two days earlier. Following up, the Code Enforcement Officer contacted the Beaver County Conservation District to conduct a site inspection at the Property. They discovered that a full-scale logging operation was underway which was being conducted by Taylor. There was no permit to log issued by the Township to Taylor or Yoder. The Code Enforcement Officer made

the loggers stop and filed citations with the local magistrate for logging without a permit.

On October 10, 2002, Taylor filed an application for logging as required by Ordinance 335. After reviewing the application to make sure it was complete, the Code Enforcement Officer sent the application to the Township Engineer Frank E. Lemmon, Jr. (Township Engineer). After consulting with geologists, the Township Engineer issued a report recommending that "based on the previous events in this area there is no doubt that [the Property] is in a landslide-prone area of the Township and that the permit application to log this parcel should be denied by the Township Logging Administrator." (Reproduced Record at 138a). After receiving that recommendation, the Code Enforcement Officer officially notified Yoder on October 24, 2002, that the permit was denied.

Yoder then requested a variance[1] contending that timbering could be conducted without appreciably increasing the risk of landslides. Taylor then contacted a professional engineering firm, PSI, to survey the land. PSI indicated that non-intrusive

logging operations would not have a negative effect on the slope of the Property, but that "most areas of the site are susceptible to landsliding[.]" (Reproduced Record at 177a). The Code Enforcement Officer also walked the proposed logging site and discovered that there had been numerous landslides in that area in the past, citing at least three landslides directly above the Property that washed away a nearby road. After receiving another Engineering Report denying Yoder's request for a variance, the Code Enforcement Officer formally notified Yoder that the request for a variance was denied on November 26, 2002. An appeal from the denial of the variance and the denial of the logging permit was then taken to the Board.

After a public hearing, the Board issued findings of fact, conclusions of law, and an order affirming both denials, finding that based on geological reports, the Property was landslide-prone, and timber could not be harvested because it appreciably increased the risk of more landslides. Taylor appealed that order to the trial court, which received a Stipulation of Attorneys setting forth information relating the enactment of Ordinance 335.[2] Because sub-

1. Section 7A of Ordinance 335 provides as follows:
 A variance may be granted from the requirements of this Ordinance if the following criteria are met:
 (1) That there is good and sufficient cause based on physical circumstances, con[d]itions or topography unique to the property.
 (2) That failure to grant the variance would result in unnecessary hardship to the applicant.
 (3) Any variance granted shall be the minimum variances necessary to relieve the hardship claimed as a basis for the variance.
 (Reproduced Record at 44a). In addition, no variance will be granted if granting the variance will result in public or private nuisance or violation of certain state laws, and all

grants may be subject to reasonable conditions in order to protect the public welfare. All variance applications are forwarded to the Township Engineer for review and decision. Within twenty days thereafter, the Township Engineer makes a recommendation to the Logging Administrator and gives the reasons for the recommendation. The Board is then notified in writing of the decision by the Logging Administrator.

2. The Stipulation set forth the following facts: (1) Ordinance 335 was prepared by the Township and enacted by the Board on November 19, 2001; (2) the Harmony Township Planning Commission did not draft or prepare Ordinance 335; (3) the Harmony Township Planning Commission did not advertise or hold a public meeting regarding Ordinance 335; (4) the Board did not submit Ordinance

stantial evidence supported the Board's decision, the trial court dismissed Taylor's appeal. Taylor appeals from that determination.[3]

## I.

■ Abandoning the argument that he is entitled to a permit under the terms of Ordinance 335 or a variance from its provisions, Taylor instead argues that Ordinance 335 is invalid because the Township is not authorized to regulate logging or harvesting of timber under the First Class Township Code (Code).[4] In making this argument, Taylor contends that (1) the general "police power" provisions of the Code do not specifically authorize the Township to regulate logging or timber harvesting as the Township suggests; and (2) the Pennsylvania Municipalities Planning Code (MPC)[5] is the enabling statute that controls this case, and because the MPC prohibits unreasonable restrictions on logging and timber harvesting, Ordinance 335 is invalid.[6]

As to Taylor's first argument, the Code has numerous sections referring to general police powers of first class townships. Un-

der Section 1502, cl. X of the Code, first class townships may "take all needful means for securing the safety of persons or property within the township." 53 P.S. § 56510. In addition, Section 1502, cl. LII of the Code provides that a first class township may:

make and adopt all such ordinances, by-laws, rules and regulations not inconsistent with or restrained by the Constitution and laws of this Commonwealth as may be deemed expedient or necessary for the proper management, care and control of the township and its finances, and the maintenance of peace, good government and welfare of the township and its trade, commerce and manufactures.

53 P.S. § 56552. Finally, Section 1502, cl. XLIV of the Code provides that first class townships may "make such regulations as may be deemed necessary for the health, safety, morals, general welfare, cleanliness, beauty, convenience and comfort of the township and the inhabitants thereof." 53 P.S. § 56544. Although police powers are not without limitation, Pennsylvania

---

335 to the Harmony Township Planning Commission or the Beaver County Planning Commission for review, comment, or recommendation; (5) the Board did not hold a public hearing before enacting Ordinance 335; (6) the Board did not file a copy of the ordinance with the Beaver County Planning Commission within thirty days after the enactment of Ordinance 335; and (7) the Township gave a copy to an employee to be filed with the Beaver County Library, but there is no record that Ordinance 335 was ever so filed.

3. Under Section 754 of the Local Agency Law, 2 Pa.C.S. § 754, our scope of review of local agency determinations where a trial court receives additional evidence is limited to whether the trial court abused its discretion or committed an error of law. *Otte v. Covington Township Road Supervisors*, 149 Pa.Cmwlth. 467, 613 A.2d 183 (1992), *affirmed*, 539 Pa. 44, 650 A.2d 412 (1994).

4. Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§ 55101–58502.

5. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

6. Taylor also asserts that Ordinance 335 is preempted by the Clean Streams Law, Act of June 22, 1937, P.L.1987, *as amended*, 35 P.S. §§ 691.1–691.1001, citing regulations promulgated thereunder. *See* 25 Pa.Code §§ 102.5(b), 102.31, and 102.41. Because none of those regulations show any express or implied intention on the part of the General Assembly to preempt municipalities from regulating timber harvesting and logging, Taylor's argument fails. *See Mars Emergency Medical Services v. Township of Adams*, 559 Pa. 309, 740 A.2d 193 (1999).

courts have recognized that municipalities have the power to enact legislation aimed at protecting the health, safety, and welfare of citizens under the general welfare clauses contained in municipal codes. *See Gambone v. Commonwealth*, 375 Pa. 547, 101 A.2d 634 (1954); *Western Pennsylvania Restaurant Association v. Pittsburgh*, 366 Pa. 374, 77 A.2d 616 (1951). *See also Simco Sales Service Inc. v. Lower Merion Township Board of Commissioners*, 38 Pa. Cmwlth. 434, 394 A.2d 642 (1978).

Turning now to Ordinance 335, it is clear that the Township enacted that ordinance to prevent harm to the public welfare caused by landslides and storm water run-off. Keeping in mind that Ordinance 335 enjoys presumptive validity, *Simco*, and judging by the plain language and necessary effect of Ordinance 335, Ordinance 335 is a valid exercise of the Township's power because it seeks to minimize floods, landslides, and dangerous stormwater run-off; it seeks to prevent damage to roads, damage to drains, damage to public utilities, damage to watercourses, fire hazards, and reduction in property value; and it seeks to enhance the natural beauty and environment within the Harmony Township. All these aims fall squarely within the general police power provisions of the Code cited above.

As to Taylor's contention that the MPC is the controlling enabling statute and consequently prohibits unreasonable restrictions on logging and timber harvesting,[7]

we explained in *Land Acquisition Services, Inc. v. Clarion County Board of Commissioners*, 146 Pa.Cmwlth. 293, 605 A.2d 465 (1992), that the MPC applies in the following scenarios: (1) creation of official maps; (2) subdivision regulation; (3) planned residential developments; or (4) zoning ordinances. In that case, the county passed an ordinance regulating hazardous waste disposal activities, designating certain zones as waste sites; requiring setback requirements; requiring fences around waste sites; and requiring waste-site proposal plans. We noted that the ordinance at issue did not relate to an official map, a subdivision plan, or residential development, so the only way that the MPC would apply was to classify the ordinance as a zoning ordinance. Determining that it was not, we explained that " '[t]he distinctive characteristic of zoning involves zones, as well illustrated by Section 605 of the MPC....' " *Id.* at 470 (quoting *IA Construction Corporation v. Township of Bradford*, 143 Pa.Cmwlth. 302, 598 A.2d 1347, 1349 (1991)). We further reasoned as follows:

Although the components of the ordinance which LAS argues render the ordinance zoning ordinances are used in zoning and land use legislation, they are not, as we said in *IA*, the exclusive "hallmarks of zoning."

Because the ordinance at issue here has as its primary objective the regula-

---

7. Logging and timber harvesting are included within the definition of "forestry" under the MPC. Specifically:

**"Forestry,"** the management of forests and timberlands when practiced in accordance with accepted silvicultural principles, through developing, cultivating, harvesting, transporting and selling trees for commercial purposes, which does not involve any land development.

53 P.S. § 10107. Section 603(f) of the MPC provides as follows:

Zoning ordinances may not unreasonably restrict forestry activities. To encourage maintenance and management of forested or wooded open space and promote the conduct of forestry as a sound and economically viable use of forested land throughout this Commonwealth, forestry activities, including, but not limited to, timber harvesting, shall be a permitted use by right in all zoning districts in every municipality.

53 P.S. § 10603.

tion of hazardous waste disposal activity, and because the terms of the ordinance go no further than the "scope of that goal," our conclusion is that the ordinance is not a zoning regulation.

*Land Acquisition Services,* 605 A.2d at 470.

Applying those principles to the present case, we conclude that Ordinance 335 is not a zoning ordinance, does not deal with subdivision of Taylor's land, and does not deal with residential development; instead, the scope of Ordinance 335 is to regulate logging and timber harvesting that may jeopardize the integrity of the land in flood-prone or landslide-prone areas. Because Ordinance 335 does not contain the exclusive hallmarks of zoning, and because it has as its primary objective the regulation of timber harvesting in slide-prone and flood-prone areas, the MPC does not apply.[8]

 Finally, though not clearly set forth in his brief, Taylor appears to state that Ordinance 335 denies him economically viable use of his land and is therefore invalid. Generally, the validity of an ordinance is judged by substantive due process standards and will be struck down only if (1) it bears no substantial relationship to protecting the health, safety, and welfare of the public, and (2) it denies the landowner economically viable use of his or her land. *Chrin Brothers.* Based on our discussion above, it is clear that Ordinance 335 bears a substantial relationship to public safety because it only prohibits logging

and timber harvesting in flood-prone and slide-prone areas (and, even in those situations, Ordinance 335 gives landowners the ability to apply for and receive a variance). As to the denial of Taylor's economically viable use of the land, Taylor gives us no economic information explaining how the Property has no economic viability as a result of Ordinance 335 other than to say that he cannot perform logging or timber harvesting activities. That assertion alone is insufficient to overcome the presumptive validity of Ordinance 335 and to carry Taylor's heavy burden of proving that Ordinance 335 is invalid. *Chrin Brothers.* In any event, a claim that there is an unlawful taking cannot be made when the only available use sought by the landowner (in this case, logging and timber harvesting on landslide-prone or flood-prone land) would harm the public welfare.

Because Ordinance 335 is a valid exercise of the Township's police powers, the MPC does not apply to Ordinance 335, and Ordinance 335 bears a substantial relationship to public protection, it is not substantively invalid.

## II.

 Taylor argues that Ordinance 335 is void *ab initio* because the Township failed to strictly comply with Section 1502, cl. I(a) of the First Class Township Code, 53 P.S. § 56502(a),[9] which requires the advertisement of an ordinance not less than seven days before its passage, and Ordinance 335 was advertised on Novem-

---

8. Assuming *arguendo* that the MPC applied, Ordinance 335 does not unreasonably restrict forestry activities because the ordinance does not prohibit logging and timber harvesting activities, but instead limits those activities to areas that are not flood or land-slide prone in order to prevent potentially hazardous results. *See, e.g., Chrin Brothers, Inc. v. Williams Township Zoning Hearing Board,* 815 A.2d 1179 (Pa.Cmwlth.2003).

9. Section 1502, cl. I(a) of the First Class Township Code provides that "[a]ll such proposed ordinances, unless otherwise provided by law, shall be published at least once in one newspaper of general circulation in the township *not more than sixty days nor less than seven days* prior to passage." 53 P.S. § 56502(a).

ber 16, 2001, just three days before its enactment.[10] Conceding that he raised this procedural challenge to the validity of the advertising nearly 18 months after the stated effective date of Ordinance 335, and conceding that such challenges must be brought within thirty days under Section 5571(c)(5), 42 Pa.C.S. § 5571(c)(5), Taylor nevertheless argues that procedural defects render an ordinance void *ab initio*, making the thirty-day statutory period to challenge the validity of an ordinance inapplicable.

In making that argument, Taylor acknowledges that under this Court's decision in *Schadler v. Zoning Hearing Board of Weisenberg Township*, 814 A.2d 1265 (Pa.Cmwlth.2003), he was required to bring a challenge to those procedural defects within thirty days under Section 5571(c)(5) of the Judicial Code, 42 Pa.C.S. § 5571(c)(5). Being prescient, however, Taylor argues that our decision in *Schadler* was wrongly decided because it was not in accord with our Supreme Court's decision in *Cranberry Park Associates v.*

*Cranberry Zoning Hearing Board*, 561 Pa. 456, 751 A.2d 165 (2000), and *Valianatos v. Zoning Hearing Board of Richmond Township*, 766 A.2d 903 (Pa.Cmwlth. 2001),[11] both of which held that certain procedural defects in enacting a local ordinance make it void *ab initio*, thereby eliminating the need to bring a procedural challenge within the thirty-day statutory period.

As indicated, since the time the parties in this case filed briefs and presented argument, our Supreme Court has reversed our decision in *Schadler v. Zoning Hearing Board of Weisenberg Township*, 850 A.2d 619 (Pa.2004). *Schadler* involved a landowner who challenged a proposed amendment to the local zoning ordinance nearly 200 days after the stated effective date because the township failed to advertise the full text of the ordinance or a summary thereof and failed to make the ordinance available for public inspection pursuant to Section 1601(a) of the Second Class Township Code.[12] At the time of the

10. Taylor also contends that Ordinance 335 was invalidly enacted under the MPC because it was never submitted to the local planning commission for pre-enactment review, it was never submitted to the public for comment, and it was never advertised in accordance with the MPC. *See* 53 P.S. §§ 10504–10506; §§ 10607–10609. Because we have determined that the MPC is inapplicable, these procedures are inapplicable, and any failure by the Township to follow MPC procedures in enacting Ordinance 335 is irrelevant to this dispute.

11. *Cranberry* held that failure to comply with the relevant statutory language applicable to the locality in enacting ordinances rendered the proposed ordinances void *ab initio* (i.e., no effective date). As a result, the 30–day statutory period for challenging ordinances on procedural grounds never began. *See* 42 Pa.C.S. § 5571(c)(5). In *Schadler*, we found *Cranberry Park* was not controlling because it hinged on the interpretation of section 1601 of the Second Class Township Code, 53 P.S. § 66601, while *Cranberry Park* was based on

section 1741 of the Second Class Township Code, 53 P.S. § 65741, a predecessor to section 1601. We held that section 1601, unlike repealed section 1741, mandates that the thirty-day limitations period for procedural challenges always begins ticking on an ordinance's nominal effective date, irrespective of procedural defects in the ordinance's enactment.

12. That section provides in part as follows:

(a) The board of supervisors may adopt ordinances in which general or specific powers of the township may be exercised, and, by the enactment of subsequent ordinances, the board of supervisors may amend, repeal or revise existing ordinances. All proposed ordinances, whether original, amended, repealed, revised, consolidated or codified, shall be published not more than sixty days nor less than seven days before passage at least once in one newspaper circulating generally in the township. Public notices shall include either the full text or a brief

Supreme Court's decision, Section § 5571(c)(5) read as follows:

> Questions relating to an alleged defect in the process of enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision shall be raised by appeal commenced within 30 days after the effective date of the ordinance, resolution, map or similar action.

42 Pa.C.S. § 5571(c)(5) (emphasis added) (rewritten by Act of December 9, 2002, P.L. 1705, No. 215, § 3).

In reversing our Court's holding that the thirty-day statutory period began to run on the purported effective date of the ordinance, the Supreme Court held that procedural challenges were not time-barred under pre-amendment Section 5571(c)(5) and the similar provision in Section 909.1(a)(2) of the MPC, 53 P.S. § 10909.1 [13] because the defects in enacting the ordinance. involved in that case rendered the ordinance void *ab initio*. In other words, the defects essentially eliminated the "effective date" of the challenged ordinance from which the thirty-day statutory period for taking an appeal was calculated. Because there was no "effective" date, challenges to an ordinance on procedural grounds could be brought well past the thirty-day statutory period for challenging procedural irregularities in the enactment of the ordinance.

Although Taylor predicted the Supreme Court's treatment of our decision in *Schadler*, it does not necessarily follow that he now prevails on this issue because Section 5571(c)(5) of the Judicial Code has been amended. It now reads in relevant part as follows: [14]

> Notwithstanding section 909.1(a)(2) of the act of July 31, 1968 (P.L. 805, No. 247), known as the Pennsylvania Municipalities Planning Code, questions relating to an alleged defect in the process of

---

summary of the proposed ordinance which lists the provisions in reasonable detail and a reference to a place within the township where copies of the proposed ordinance may be examined. If the full text is not included, a copy shall be supplied to the publishing newspaper when the notice is published, and an attested copy shall be filed within thirty days after enactment in the county law library or other county office designated by the county commissioners, who may impose a fee no greater than that necessary to cover the actual costs of storing the ordinances. The date of such filing shall not affect the effective date of the ordinance, the validity of the process of the enactment or adoption of the ordinance; nor shall a failure to record within the time provided be deemed a defect in the process of the enactment or adoption of such ordinance.
53 P.S. § 66601(a).

**13.** That section provides as follows:

> Challenges to the validity of a land use ordinance raising procedural questions or alleged defects in the process of enactment

or adoption which challenges shall be raised by an appeal taken within 30 days after the effective date of said ordinance.
53 P.S. § 10909.1(a)(2).

**14.** This case is also factually much different than *Schadler* because in *Schadler* the township failed to publish the full text or a summary of the ordinance at all and failed to make the proposed ordinance available for public inspection, all contrary to the MPC and the Second Class Township Code. By contrast, as required by Section 1502, cl. I(a) of the First Class Township Code, the Township published a summary of Ordinance 335 and informed the public that it could be inspected at the Office of the Secretary during normal business hours. In *Schadler*, the township's failure to advertise and failure to inform the public of the changes in local zoning laws served to toll the thirty-day statutory period. In this case, the Township did advertise, albeit only three days before Ordinance 335. If pre-amendment Section 5571(c)(5) still governed, the issue would be whether the advertising was sufficient to give the ordinance an "effective" date starting the thirty-day statutory period.

enactment or adoption of any ordinance *shall be raised by appeal or challenge commenced within 30 days after the intended effective date of the ordinance.* As used in this paragraph, the term intended effective date means the effective date specified in the ordinance or, if no effective date is specified, the date 60 days after the date the ordinance was finally adopted but for the alleged defect in the process of enactment or adoption. 42 Pa.C.S. § 5571(c)(5) (emphasis added). Our Supreme Court specifically declined to address the impact of the amendment in *Schadler* because it was not in effect when the landowner in that case brought his procedural challenge.[15] In this case, though, amended Section 5571(c)(5) of the Judicial Code governs, and we must address it because it took effect before Taylor raised his procedural challenge to Ordinance 335.[16]

■ Under amended Section 5571(c)(5), the "intended effective date" of an ordinance is either (1) the date specified in the ordinance or (2) 60 days after the township otherwise finally adopts the ordinance, if no date is specified. Because the thirty-day statutory period for challenging alleged defects in the enactment of an ordinance begins on the "intended" effective date "but for the alleged defect in the process of enactment or adoption," Section 5571(c)(5) now means that the statutory period for bringing procedural challenges to local ordinances begins to run without regard to alleged procedural defects that potentially would preclude the ordinance from taking effect. Consequently, a determination of whether an ordinance is *actually* void can only come after a timely procedural challenge to the ordinance under amended Section 5571(c)(5).

In this case, Ordinance 335 has as its intended effective date November 19, 2001. Taylor first challenged procedural problems with Ordinance 335 on June 18, 2003,

---

15. Our Supreme Court stated as follows:

[T]he Township appears to contend that the General Assembly's amendment of 42 Pa. C.S. § 5571(c)(5) on December 9, 2002, evinces a further legislative intent to overrule *Cranberry Park*. The amended text of that subsection provides that the thirty-day limitations period for challenging municipal ordinances begins ticking on an ordinance's "intended" effective date. 42 Pa. C.S. § 5571(c)(5). In addition, the subsection adds: "As used in this paragraph, the term 'intended effective date' means the effective date specified in the ordinance ... or, if no effective date is specified, the date 60 days after the date the ordinance was finally adopted but for the alleged defect in the process of enactment of [sic] adoption." *Id.* However, *Schadler filed his present claim with the ZHB in August 2000, prior to the effective date of the December 2002 amendment to 42 Pa.C.S. § 5571(c)(5). Thus, even if the amendment does affect subsequently filed procedural challenges to township ordinances, it clearly does not apply here.* Likewise, we reject the Township's contention that the General Assembly's apparent intent

in enacting the December 2002 amendment to Section 5571(c)(5) should control the outcome of our decision here, *where the meaning of the combination of statutes in effect in August 2000 is plain.*
*Schadler,* at 627–28 (emphasis added).

16. The statutory notes to Section 5571(c)(5) provide as follows:

Section 6 of 2002, Dec. 9, P.L. 1705, No. 215, effective in 60 days, provides that "[t]he amendment of 42 Pa.C.S. § 5571(c)(5) shall apply to an appeal or challenge relating to an alleged defect in the process of the enactment or adoption of any ordinance, resolution, map or similar action *commenced after December 31, 2000.*"
*See* Act of December 9, 2002, P.L. 1705, No. 215, § 6; *see also* 42 Pa.C.S. § 5571(c)(5) (historical and statutory notes) (emphasis added). Accordingly, because Taylor's challenge to Ordinance 335 was raised on June 18, 2003, the amendment to Section 5571(c)(5) applies. *Cf. Schadler* (challenge was brought in August 2000, before the amendment took effect).

nearly 18 months beyond the statutory deadline, making Taylor's challenge to any alleged defect in the enactment process time-barred under the amendment to Section 5571(c)(5).

In conclusion, the Township had the authority to enact Ordinance 335 under the First Class Township Code, and despite any procedural irregularities, Taylor's challenge thereto is time-barred under the amendment to Section 5571(c)(5). Accordingly, the trial court is affirmed.

### ORDER

AND NOW, this 10th day of June, 2004 the order of the Court of Common Pleas of Beaver County dated October 27, 2003, at No. 10994–2003 is affirmed.