BUILDING OWNERS AND MANAG-
ERS ASSOCIATION OF PITTS-
BURGH, CB Richard Ellis/Pitts-
burgh, L.P., Winthrop Management,
L.P., 110 Gulf Associates, L.P., Frick
Lenders Associates, L.P.

v.

CITY OF PITTSBURGH and Council of
the City of Pittsburgh, Service Em-
ployees International Union Local 3
and Service Employees International
Union, CLC

Appeal of: Service Employees Interna-
tional Union Local 3 and Service Em-
ployees International Union, CLC.

Building Owners and Managers Associa-
tion of Pittsburgh, CB Richard El-
lis/Pittsburgh, L.P., Winthrop Man-
agement, L.P., 110 Gulf Associates,
L.P., Frick Lenders Associates, L.P.

v.

City of Pittsburgh, and Council of the
City of Pittsburgh, Service Employees
International Union Local 3 and Ser-
vice Employees International Union,
CLC

Appeal of: City of Pittsburgh
and Council of the City
of Pittsburgh.

Commonwealth Court of Pennsylvania.

Argued May 9, 2007.
Decided July 19, 2007.

Michael J. Healey, Pittsburgh, for appellants, Service Employees International Union, Local 3 and Service Employees International Union, CLC.

David F. Toal and Hugh F. McGough, Pittsburgh, for appellees.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, and McGINLEY, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Service Employees International Union, Local 3, and Service Employees International Union, CLC (collectively, Union), appeal an order of the Court of Common Pleas of Allegheny County invalidating Pittsburgh City Ordinance 22–2004, also known as The Protection of Displaced Contract Workers Ordinance. In this case, we consider whether the Ordinance was *ultra vires* by reason of Section 2962(f) of the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. § 2962(f).

On November 30, 2004, Pittsburgh City Council enacted The Protection of Displaced Contract Workers Ordinance (Ordinance) as Chapter 769 of the Pittsburgh Code. The Ordinance was intended to protect certain non-supervisory workers in the City of Pittsburgh who lose their jobs when their employer's service contract is awarded to a new contractor.[1] The Ordinance applies to contractors with five or more employees that provide janitorial, security or building maintenance services in "Commercial Office or Residential Buildings, University Complexes, or other Complexes over 100,000 square feet." Ordinance § 769.01(b); Reproduced Record at 82a (R.R. ——). Pursuant to the Ordinance, any contractor that is awarded a service contract must retain most employees of the previous contractor for a 180–day transition employment period. Ordinance § 769.03(5); R.R. 83a.[2] During the transition period, retained employees may not be terminated except for cause, which includes a determination by the successor contractor that fewer employees are needed to perform the new contract. Ordi-

---

1. The stated purpose of the Ordinance is "to require that all contractors awarded contracts for the performance of janitorial, security and/or building maintenance ... within the City of Pittsburgh in Commercial Office or Residential Buildings, University Complexes, or other Complexes over 100,000 square feet retain certain non-supervisory employees of the previous contractor for a 180 day transition employment period during which period retained employees may not be terminated

except for cause, and to require that such employees be provided with various other job security protections." Ordinance § 769.01(b); Reproduced Record at 82a.

2. The Ordinance exempts from coverage managerial or confidential employees and employees who work less than 15 hours per week. Ordinance § 769.02(3); R.R. 82a.

nance § 769.03(7), (9); R.R. 83a. In the event that fewer employees are needed, the successor contractor must retain employees by seniority within each job classification. Ordinance § 769.03(7); R.R. 83a. A contractor who violates the Ordinance is subject to fines, and displaced employees are given a private right of action to enforce the Ordinance. Ordinance § 769.04; R.R. 84a.

On December 7, 2005, Building Owners and Managers Association of Pittsburgh (Association)[3] filed a complaint in equity and action for declaratory judgment against the City and City Council. The Association sought a declaration that Section 769.03 of the Ordinance was *ultra vires* under Section 2962(f) of the Home Rule Law, 53 Pa.C.S. § 2962(f). The Association also challenged the private right of action created by Section 769.04 and the penalty provisions of Section 769.05 of the Ordinance as invalid under the Home Rule Law, the Pennsylvania Constitution and the Judicial Code. Union intervened as a defendant on behalf of more than 1000 janitorial workers in the City of Pittsburgh.[4] Union conceded that the private cause of action in Section 769.04 was invalid, leaving the employee retention provisions in Section 769.03 and penalty provisions in Section 769.05 the only challenges still at issue. The parties filed cross motions for judgment on the pleadings.

Citing *Smaller Manufacturers Council v. Council of City of Pittsburgh*, 85 Pa. Cmwlth. 533, 485 A.2d 73 (1984), as binding, the trial court held that the Ordinance, which "determines duties, responsibilities, and requirements placed upon businesses," violated Section 2962(f) of the Home Rule Law, 53 Pa.C.S. § 2962(f). Accordingly, the trial court granted the Association's motion for judgment on the pleadings and denied Union's motion. Union now appeals.

■■■ On appeal,[5] Union argues that the trial court erred in holding that the City exceeded its home rule authority by enacting the Ordinance. Union acknowledges that this Court's decision in *Smaller*, which invalidated a similar ordinance, is controlling. However, Union urges this Court to reconsider our decision in that case as well as our more recent decision in *Hartman v. City of Allentown*, 880 A.2d 737 (Pa.Cmwlth.2005). Union contends that *Smaller* and *Hartman* are premised upon an erroneous interpretation of Section 2962(f) of the Home Rule Law that eviscerates the broad powers of self-government granted by the General Assembly to home rule municipalities. Alternatively, Union argues that Section 2962(f) should be construed narrowly to apply only to a home rule municipality's authority to regulate the collection and withholding of taxes.

---

**3.** The Association is a professional association of building owners and managers in the city of Pittsburgh. The other named plaintiffs/appellees are CB Richard Ellis/Pittsburgh, L.P., Winthrop Management, L.P., 110 Gulf Associates, L.P., and Frick Lenders Associates, L.P. These four appellees are all parties to service contracts with other entities for the provision of janitorial, building maintenance and security workers. We shall refer to appellees collectively as the Association.

**4.** The City joined Union's motion and brief, as it does in Union's appeal to this Court.

**5.** This Court may sustain the trial court's grant of judgment on the pleadings only where the moving party's right to succeed is certain and the case is so free from doubt that trial would be a fruitless exercise. *Hartman v. City of Allentown*, 880 A.2d 737, 741 (Pa. Cmwlth.2005). Our standard of review is whether the trial court committed an error of law or abused its discretion. *Id.* We may consider only the pleadings, admissions and any documents properly attached to the pleadings presented by the party against whom the motion is filed. *Id.*

The heart of this appeal is the meaning of Section 2962(f) of the Home Rule Law, which limits the ability of home rule municipalities to regulate businesses and employers. It provides:

(f) Regulation of business and employment.—A municipality which adopts a home rule charter *shall not determine duties, responsibilities or requirements placed upon businesses,* occupations *and employers,* including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment, *except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities.* This subsection shall not be construed as a limitation in fixing rates of taxation on permissible subjects of taxation.

53 Pa.C.S. § 2962(f) (emphasis added). The trial court held, quite simply, that the Ordinance violated Section 2962(f) because it determined "the duties, responsibilities or requirements placed upon businesses," namely building owners and managers. By regulating how and when these businesses would contract for the services required to operate their buildings, the Ordinance directly violated Section 2962(f). For the reasons that follow, we agree with the trial court's straightforward reading of the Home Rule Law.

We begin our analysis with a review of the prior cases interpreting Section 2962(f) of the Home Rule Law. In *Smaller,* this Court considered an ordinance (Ordinance 21) intended to protect rank and file workers, very similar to the ordinance at issue here. Under Ordinance 21, an employer was required to notify a specially created Bureau of Business Security whenever a plant closure, relocation or other reduction in operations would result in a loss of employment of 15 percent or more of employees. By imposing this notification requirement, the City hoped to reduce the economic disruption caused by plant closings and relocations in the Pittsburgh area.

Notwithstanding the City's laudable objective, the trial court invalidated Ordinance 21 because, *inter alia,* it violated former Section 302(d) of the Home Rule Law, which, like its counterpart in Section 2962(f) of the present law, prohibited a municipality from "determin[ing] the duties, responsibilities or requirements placed upon businesses, occupations and employers." [6] On appeal, this Court affirmed. We explained, succinctly, that

the trial court correctly concluded that the ordinance flies in the face of the express language of [Section 302(d)] of the Home Rule and Optional Plans Law. Therefore, if the City wishes to act in this area it must be empowered to do so by the General Assembly.

*Smaller,* 485 A.2d at 77.

The scope and meaning of Section 2962(f) was developed more fully in *Hart-*

---

**6.** The language of former Section 302(d) of the Home Rule Law was virtually identical to that found in Section 2962(f):

No municipality which adopts a home rule charter shall at any time thereunder determine the duties, responsibilities or requirements placed upon businesses, occupations and employers, including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment, except as expressly provided by the acts of the General Assembly which are applicable in every part of the Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities.

Act of April 13, 1972, P.L. 184, formerly 53 P.S. § 1–302(d), repealed by Act of December 19, 1996, P.L. 1158, 53 Pa.C.S. § 2962(f).

*man v. City of Allentown,* 880 A.2d 737 (Pa.Cmwlth.2005), the only other reported decision specifically addressing this statutory provision. At issue in *Hartman* was the City of Allentown's amendment to its Human Relations Ordinance to add "sexual orientation" and "gender identity" as prohibited bases of discrimination in employment, housing and public accommodations. Several individuals, including a business operator, challenged the ordinance, and the trial court invalidated the ordinance under Section 2962(f). The court held that the ordinance placed duties and responsibilities on businesses, occupations and employers without the requisite statutory authority. On appeal, we reversed.

At issue in *Hartman* was how to read the broad grant of authority to home rule municipalities in Section 2961 of the Home Rule Law,[7] together with the concomitant limitation on that authority in Section 2962(f). To read Section 2962(f) to bar Allentown's enactment of anti-discrimination legislation would lead to an anomalous result: a home rule municipality like Allentown would be prohibited from enacting such an ordinance while a non-home rule third-class city, such as Harrisburg, would be free to bar discrimination on the basis of sexual orientation and gender identity.[8] However, home rule municipalities are supposed to have greater authority than their non-home rule counterparts.

We concluded that Section 2962(f) should be read narrowly, not broadly. Specifically, we construed Section 2962(f) to prohibit the placement of *affirmative* duties on employers but not the placement of *restraints* from unlawful discrimination. This interpretation, we explained, was consistent with *Smaller:*

> The requirements in the *Smaller* ordinance, that employers or businesses notify a City-created Bureau if a "business decision" was made (in order for the Bureau to decide if an employer could close, leave the city limits, or reduce its work force), go to the heart of business management and usurp the role of management. However, in this case, there is no evidence that Allentown designed or intended to impose affirmative duties of business management on businesses; rather, the Ordinance is intended to protect Allentown's citizens from discrimination.

*Hartman,* 880 A.2d at 746–747 (footnote omitted). Because Allentown's ordinance imposed no affirmative duties on businesses and employers, this Court held that it was not *ultra vires* under Section 2962(f) of the Home Rule Law.

Unlike Allentown's anti-discrimination ordinance, the Ordinance at issue in the present case imposes affirmative duties on certain businesses and employers in the City of Pittsburgh. The Ordinance dictates who a successor contractor must employ during the 180–day transition period following the award of a service contract. The Ordinance does so in several ways. For example, the Ordinance prohibits a successor contractor from discharging employees retained from the previous con-

---

**7.** It states:

A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter. All grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality.

53 Pa.C.S. § 2961.

**8.** The Optional Third Class City Charter Law contains no limitation on municipal authority analogous to that found in Section 2962(f). Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§ 41101–41625.

tractor except for cause, which includes having more employees than are necessary to perform the new service contract. In the event that a workforce reduction is necessary, the successor contractor must institute a seniority system before discharging any employees. These affirmative duties are quite similar to, but more intrusive than, the reporting requirements of the ordinance this Court invalidated in *Smaller*. Because the requirements of the Ordinance clearly "go to the heart of business management and usurp the role of management," *Hartman*, 880 A.2d at 746, we hold that the trial court did not err by invalidating the Ordinance as beyond the powers of a home rule municipality to enact.

Union urges this Court to reconsider *Smaller* and *Hartman* because those cases are premised upon an overly broad, and therefore erroneous, interpretation of Section 2962(f). Union asserts that Section 2962(f) codified basic preemption principles that had been developed by our courts at the time the Home Rule Law was enacted in 1972. As such, Section 2962(f) was intended to forbid municipalities from determining the duties of businesses, occupations and employers that have *already been imposed* by the legislature. Union believes that this Court's *Smaller* and *Hartman* decisions enlarge the scope of Section 2962(f) to forbid home rule municipalities from imposing *any* duties upon businesses, occupations and employers. This, Union contends, conflicts with the primary goal of the Home Rule Law to provide broader powers of self-government to home rule municipalities.

Union's position rests upon a misinterpretation of Section 2962(f). Union maintains that Section 2962(f) prohibits a home rule municipality from enacting legislation only where duties have already been imposed by the legislature upon businesses and employers. The plain language of Section 2962(f) says something quite different: a home rule municipality shall not determine duties, responsibilities or requirements placed upon businesses and employers "*except as expressly provided by statutes* which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities." 53 Pa. C.S. § 2962(f) (emphasis added). This means that express statutory authority is a prerequisite to home rule municipal legislation like that at issue in this case. Stated otherwise, the City needed express statutory authority to impose "employee retention requirements" upon service contractors. Union offers not so much as a citation to any such statutory authority.

*Smaller* and *Hartman* were correctly decided. While this Court's home rule analysis in *Smaller* may have been brief, we stated unequivocally that Ordinance 21 was contrary to the Home Rule Law's express limitation on a municipality's ability to regulate business, emphasizing that "if the City wishes to act in this area *it must be empowered to do so by the General Assembly.*" *Smaller*, 485 A.2d at 77 (emphasis added). *Hartman* reconciled this limitation with the expansive right of self-government guaranteed by the Home Rule Law. The *Hartman* court did so by recognizing that the Section 2962(f) limitation applies to affirmative duties placed upon businesses and employers.[9] Union is

---

9. Limiting the application of Section 2962(f) to only "affirmative" duties was not without precedent. It is, as this Court observed in *Hartman*, "consistent with the Legislature's intent, expressed elsewhere, that the phrase 'regulation of business' means affirmative duties being placed on businesses." *Hartman*, 880 A.2d at 746. We cited numerous other statutes that specifically focus on or limit the affirmative duties that non-home

simply incorrect that *Hartman* resulted in a diminution of home rule power. Because *Hartman* narrowed the reach of Section 2962(f), it provided greater protection of the right of home rule.

■ Union argues, alternatively, that Section 2962(f) should be construed even more narrowly than it was in *Hartman* to apply only to taxation. In support, Union focuses on the following highlighted language in Section 2962(f):

> A municipality which adopts a home rule charter shall not determine duties, responsibilities or requirements placed upon businesses, occupations and employers, *including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment,* except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities. This subsection shall not be construed as a limitation in fixing rates of taxation on permissible subjects of taxation.

53 Pa.C.S. § 2962(f) (emphasis added). Under Union's proffered interpretation, Section 2962(f) limits only the City's authority to regulate the collection and withholding of taxes by businesses and employers. We disagree.

■ One of the most fundamental principles of statutory interpretation is that "each word used by the Legislature has meaning and was used for a reason, not as mere surplusage." *Fisher v. Department of Public Welfare,* 509 Pa. 164, 169, 501 A.2d 617, 619 (1985). Words and phrases

must also be construed in accordance with their common and approved usage. 1 Pa. C.S. § 1903(a). Here, the legislature's use of the participle "including" to introduce the clause relating to taxation is capable of only one interpretation: an employer's duty to withhold, remit or report taxes is but one type of duty which a home rule municipality may not regulate without legislative authorization.[10] Union's contrary interpretation, which essentially ignores the plain meaning of "including" and its function within the sentence, is wholly without merit.

For all of the foregoing reasons, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 19th day of July, 2007, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter, dated November 20, 2006, is hereby AFFIRMED.

---

rule municipalities can place on businesses and employers. *See Hartman,* 880 A.2d at 745–746 (collecting examples).

10. It bears noting that Union's alternative interpretation of Section 2962(f) is contrary to *Smaller.* In *Smaller,* the ordinance that was invalidated under former Section 302(d) of

the Home Rule Law had no relation to taxation. It pertained only to an employer's duty to notify a specially created bureau in advance of implementing certain business decisions that could negatively affect its workforce.