985 A.2d 711

BUILDING OWNERS AND MANAGERS ASSOCIATION OF PITTSBURGH, CB Richard Ellis/Pittsburgh L.P., Winthrop Management, L.P., 110 Gulf Associates, L.P., Frick Lenders Associates, L.P.

v.

CITY OF PITTSBURGH and Council of the City of Pittsburgh, Service Employees International Union, Local 3, and the Service Employees International Union, CLC.

Appeal of: Service Employees International Union Local 3 and Service Employees International Union, CLC.

Supreme Court of Pennsylvania.

Argued March 2, 2009.

Decided Dec. 28, 2009.

Michael James Healey, Glen Stephen Downey, Healey & Hornack, P.C., Pittsburgh, for Service Employees International Union Local 3 & Service Employees International Union CLC.

George R. Specter, City of Pittsburg Law Department, Pittsburgh, for City of Pittsburgh and Pittsburgh City Council.

David Furer Toal, Toal Law Firm, P.C., for Winthrop Management and Building Owners and Managers Association.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice GREENSPAN.

This Court granted allocatur in order to determine whether the City of Pittsburgh exceeded its authority as a home rule municipality when it passed an ordinance requiring employers with new service contracts to keep the employees of the prior contractor for at least 180 days. For the reasons that follow, we hold that the City of Pittsburgh exceeded its power and violated the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. § 2962(f). We affirm the order of the Commonwealth Court.

On November 30, 2004, the Pittsburgh City Council enacted the Protection of Displaced Contract Workers Ordinance ("Ordinance") as Chapter 769 of the Pittsburgh Code.[1] The Ordinance is intended to protect certain non-supervisory workers in the City of Pittsburgh who lose their jobs when their employer's service contract is awarded to a new contractor. The Ordinance applies to contractors with five or more employees who provide janitorial, security, or building mainte-

1. 7 Pittsburgh Code §§ 769.01–769.07.

nance services to large commercial buildings within the City of Pittsburgh.[2] Pursuant to the Ordinance, any contractor that is awarded a new service contract must retain most employees of the previous contractor for a 180–day transition period.[3] During the transition period, retained employees may not be terminated except for cause, which is based on performance or conduct of the particular employee.[4] A contractor who violates the Ordinance is subject to fines, and displaced employees are given a private right of action to enforce the Ordinance.[5]

On December 7, 2005, Building Owners and Managers Association of Pittsburgh, CB Richard Ellis/Pittsburgh, L.P., Winthrop Management, L.P., 110 Gulf Associates, L.P., and Frick Lenders Associates, L.P. ("Appellees") filed a complaint in equity and action for declaratory judgment against the City of Pittsburgh and the City Council. Appellees sought a declaration that the Ordinance was *ultra vires* under 53 Pa.C.S. § 2962(f). The Service Employees International Union ("SEIU") intervened as an additional defendant on behalf of more than 1,000 janitorial workers in Pittsburgh. Appellees and SEIU then filed cross motions for judgment on the pleadings.[6]

On November 20, 2006, the Court of Common Pleas of Allegheny County held that the Ordinance violated 53 Pa.C.S. § 2962(f), granted Appellees' motion for judgment on the pleadings, and denied SEIU's motion. On July 19, 2007, the *en banc* Commonwealth Court affirmed and held that "the Ordinance at issue in the present case imposes affirmative duties on certain businesses and employers in the City of Pittsburgh." *Building Owners and Managers Ass'n of Pittsburgh v. City of Pittsburgh*, 929 A.2d 267, 271 (Pa.

2. *Id.* at § 769.01(b).

3. *Id.* at § 769.03(5).

4. *Id.* at § 769.03(9).

5. *Id.* at § 769.04. The parties stipulated that the section of the Ordinance that provided a private right of action was invalid.

6. The City of Pittsburgh and the Pittsburgh City Council joined SEIU's motion for judgment on the pleadings.

Commw.2007). SEIU filed a Petition for Allowance of Appeal. On September 24, 2008, this Court granted allocatur in order to determine:

> Whether the Commonwealth Court's opinion conflicts with the Home Rule Law's intent to liberally construe the broad powers provided to those municipalities that adopt Home Rule? More specifically, whether the Commonwealth Court erred in affirming the trial court's ruling that "The Protection of Displaced Contract Workers Ordinance," Pittsburgh City Code of Ordinances 22–2004, Chapter 769, Janitorial, Building Maintenance and Security Contractors ("PDCWO") is *ultra vires* pursuant to 53 Pa.C.S. § 2962(f)?

Municipalities adopting a home rule charter—such as the City of Pittsburgh—are given broad authority subject to certain enumerated limitations. *See* 53 Pa.C.S. §§ 2961–2962.[7] Section 2962(f) of the Home Rule Charter and Optional Plans Law limits a home rule municipality's regulation of businesses and provides that:

> A municipality which adopts a home rule charter shall not determine duties, responsibilities or requirements placed upon businesses, occupations and employers, including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment, except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities. This subsection shall not be construed as a limitation in fixing rates of taxation on permissible subjects of taxation.

53 Pa.C.S. § 2962(f).

Appellees' position is that the Ordinance is invalid because Section 2962(f) clearly prohibits home rule municipalities from determining "duties, responsibilities or requirements" of busi-

---

7. In direct contrast, non-home rule municipalities are given limited specifically enumerated powers by state law. *City of Phila. v. Schweiker*, 579 Pa. 591, 858 A.2d 75, 85 (2004) (holding that non-home rule municipalities can only act where specifically authorized by state law); *See e.g.* 53 P.S. §§ 55101–58502 (The First Class Township Code).

nesses. Appellant SEIU contends that Section 2962(f) should be read narrowly to limit a municipality from determining duties, responsibilities, and requirements already placed upon businesses by the Commonwealth of Pennsylvania. Thus SEIU argues that since a home rule municipality is intentionally given such broad powers, the only limitation properly placed upon Pittsburgh's ability to regulate businesses is specific preemption by state law.

Based on the plain language of the statute and our review of prior case law, we hold that the Commonwealth Court correctly ruled the Ordinance invalid. Section 2962(f) prohibits home rule municipalities, like Pittsburgh, from regulating businesses by determining their "duties, responsibilities or requirements." Pittsburgh's Ordinance nonetheless purports to prohibit a new contractor from firing or releasing any employees from a prior contractor during a 180–day transition period.[8] This is plainly a "requirement" placed upon the new contractor.

The Commonwealth Court's decision to invalidate the Ordinance pursuant to Section 2962(f) fits squarely with that court's previous decision in *Smaller Mfrs. Council v. Council of Pittsburgh*, 85 Pa.Cmwlth. 533, 485 A.2d 73 (1984).[9] In *Smaller*, Pittsburgh passed Ordinance 21, which attempted to regulate plant workers in the Pittsburgh area. *Id.* at 74. Under Ordinance 21, the plant owners and operators were required to notify the Bureau of Business Security when they were planning on closing, relocating outside city limits, or reducing operations where the reduction would affect more than 15% of employees. *Id.* The trial court held Ordinance 21 was invalid under Section 302(d) of the Home Rule and Optional Plans Law, a substantially similar prior version of Section 2962(f), and held that Pittsburgh lacked the authority to pass the ordinance.[10] *Id.*

8. 7 Pittsburgh Code § 769.03(5).

9. The parties in *Smaller* did not file petitions for allowance of appeal in this Court.

10. Former Section 302(d) stated: No municipality which adopts a home rule charter shall at any time thereunder determine the duties,

The Commonwealth Court affirmed and held that the Ordinance was invalid because it violated the clear language of Section 302(d) since it regulated the duties, responsibilities, and requirements of the businesses. *Id.* at 77. Additionally, the Commonwealth Court held that based upon the clear language of Section 302(d), Ordinance 21 was prohibited unless Pittsburgh was expressly given the authority to enact such an ordinance by the legislature. *Id.*

Based on this reasoning, it is apparent that the Ordinance at issue here is also invalid. The Commonwealth Court invalidated a simple reporting requirement in *Smaller,* and the instant Ordinance is far more invasive because it forces contractors to retain certain employees for approximately half a year. The Ordinance, therefore, is a direct regulation of the contractors in violation of Section 2962(f).

However, SEIU insists that we should reevaluate the *Smaller* decision and that the Ordinance here is more like the ordinance upheld by the Commonwealth Court in *Hartman v. City of Allentown,* 880 A.2d 737 (Pa.Commw.2005).[11] In *Hartman,* Allentown, a home rule municipality, passed an ordinance that added sexual orientation and gender identity as prohibited bases of discrimination in employment, housing, and public accommodations. *Id.* at 740. The trial court held that the ordinance was *ultra vires* because it placed duties and responsibilities on businesses in violation of Section 2962(f). *Id.* at 741.

On appeal, the Commonwealth Court reversed and held that the anti-discrimination ordinance did not actually require Allentown businesses to do anything; it therefore did not violate

responsibilities, or requirements placed upon businesses, occupations and employers, including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment, except as expressly provided by the acts of the General Assembly which are applicable in every part of the Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities. 53 P.S. § 1–302(d) (repealed).

11. The parties in *Hartman* did not file petitions for allowance of appeal in this Court.

Section 2962(f).[12] *Id.* at 747. The Commonwealth Court specifically held that "a narrow reading of Section 2962(f) is consistent with the Legislature's intent. . . . that the phrase 'regulation of business' means affirmative duties being placed on businesses."[13] *Id.* at 746.

The Commonwealth Court further explained in *Hartman* that the non-discrimination ordinance is valid under Section 2962(f) because it does not impose an affirmative duty upon businesses, but rather is designed only to protect citizens from discrimination, thus distinguishing the case from *Smaller* and ordinances like the one at issue here. 880 A.2d at 746. The ordinance in *Hartman* simply disallowed discrimination based upon sexual orientation and gender identity generally, but the

12. In *Hartman*, the Commonwealth Court also recognized that a non-home rule municipality could enact an anti-discrimination ordinance pursuant to its police powers. 880 A.2d at 743–45 (citing *Devlin v. City of Phila.*, 580 Pa. 564, 862 A.2d 1234, 1248 (2004) (holding that all municipalities have authority to enact anti-discrimination laws pursuant to their police powers)). Thus the anti-discrimination ordinance of a non-home rule municipality would be upheld. 880 A.2d at 744–45. Since home rule municipalities have broader powers than non-home rule municipalities, it follows that Allentown, as a home rule municipality, should also be allowed to enact an anti-discrimination ordinance. *Id.*

The dissent cites to *Taylor v. Harmony Twp.*, 851 A.2d 1020, 1025 (Pa.Commw.2004), to argue that non-home rule municipalities are able to regulate business by passing an ordinance like the one at issue here. Dissenting Op. at 516–17, 985 A.2d at 717–18. Thus, says the dissent, if a non-home rule municipality can regulate business, a home rule municipality like Pittsburgh, with broader authority than a non-home rule municipality, must have at least the same power. *Id.* Respectfully, the dissent confuses regulating business with health or safety ordinances that may affect a business. *Taylor* does not hold that a non-home rule municipality can pass an ordinance regulating business. 851 A.2d 1020. Rather, the ordinance at issue in *Taylor* (limiting logging to prevent flooding and landslides) was upheld because it was passed pursuant to the non-home rule municipality's specific *statutorily enumerated* police power. *Id.* at 1025. In fact, the Commonwealth Court's holding in *Taylor*, that the ordinance was within an enumerated statutory power, further supports the position that non-home rule municipalities do not have greater power than home rule municipalities.

13. Moreover, the statutes authorizing a non-home rule municipality's regulation of business also focus on and limit affirmative duties placed upon businesses. *See* 53 P.S. §§ 4401–4742 (General Municipal Law, Regulation of Businesses and Occupations).

Ordinance at issue here is an affirmative and specific duty placed upon employers. By requiring employers to retain certain employees for approximately half a year, the Ordinance exemplifies the very essence of the invasive regulations that Section 2962(f) is designed to prevent and, indeed, strictly prohibits.

SEIU, along with the dissent, argues that Section 2962(f) should be interpreted to mean that Pittsburgh's only limitation on regulating businesses is based on preemption. Dissenting Op. at 718. Essentially, SEIU and the dissent insist that Pittsburgh is prohibited only from regulating businesses where the Commonwealth of Pennsylvania has already chosen to regulate. However, SEIU and the dissent's interpretation conflicts with the plain language of Section 2962(f).

We therefore reject Appellants' position and hold that Section 2962(f) prohibits the placement of affirmative duties on employers such as those imposed by the Ordinance herein. *See Bldg. Owners*, 929 A.2d at 271; *Smaller, supra*. *Compare Hartman, supra*. Because the Ordinance imposes an affirmative duty upon contractors by requiring them to keep employees of prior contractors for a transitional period, the Ordinance reaches beyond the powers granted to the City of Pittsburgh as a home rule municipality in direct violation of Section 2962(f). Accordingly, we affirm the decision of the Commonwealth Court.

Chief Justice CASTILLE and Justices EAKIN, BAER, and McCAFFERY join the opinion.

Justice SAYLOR concurs in the result.

Justice TODD files a dissenting opinion.

Justice TODD, dissenting.

I respectfully dissent. The Majority's interpretation of the Home Rule Charter and Optional Plans Law, 53 Pa.C.S.A. §§ 2901–3171 ("Home Rule Law"), and its conclusion that a municipality that adopts home rule may not regulate business in any fashion, leads to a result that is both unreasonable and

in direct conflict with the General Assembly's manifest intent to give home rule municipalities greater power than if they had opted for other forms of government. Indeed, after today's decision, municipalities which have adopted home rule now possess less power than non-home rule municipalities. Moreover, the Majority's zero-regulation interpretation will open a Pandora's Box of challenges to numerous ordinances currently on the books which regulate, to one degree or another, local business in home rule municipalities. Finally, the Majority's reconciliation of its approach today with the Commonwealth Court's decision in *Hartman v. City of Allentown*, 880 A.2d 737 (Pa.Cmwlth.2005), which upheld an anti-discrimination ordinance in light of a similar challenge, simply cannot be sustained by the Majority's own statutory interpretation construct. Instead of using the same plain language approach to strike the Protection of Displaced Contract Workers Ordinance, the Majority, in its attempt to harmonize its decision today with *Hartman*, engrafts onto the statute a distinction between affirmative and non-affirmative duties that is not found there, and that is impossible to reconcile with the plain language of the statute. In doing so, the Majority overlooks a more nuanced approach which prohibits home rule municipalities from determining duties already imposed by the legislature, but does not bar all regulation of businesses and employers.

As a threshold matter, the Majority limits its review of the Home Rule Law to the inquiry of whether the language is clear and free from all ambiguity, 1 Pa.C.S.A. § 1921(b); yet, judicial review of a statute is not so circumscribed and a variety of principles of statutory construction must be employed to guide our inquiry—the singular one, not mentioned in the Majority Opinion, being to ascertain the intent of the legislature. 1 Pa.C.S.A. § 1921(a). Indeed, this function is so paramount that "[i]n the construction of the statutes of the Commonwealth, the rules set forth in [the Statutory Construction Act] shall be observed, unless the application of such rules would result in a construction inconsistent with the manifest intent of the General Assembly." 1 Pa.C.S.A.

§ 1901. Furthermore, while statutory language that is free from all ambiguity must be regarded, 1 Pa.C.S.A. § 1921(b), certain presumptions are simultaneously in operation, aiding our understanding of the General Assembly's intent. Specifically, we presume that the General Assembly did not intend a result that is unreasonable, absurd, or impossible of execution. 1 Pa.C.S.A. § 1922(1). Additionally, we accept that the legislature intends to favor the public interest as against any private interest. 1 Pa.C.S.A. § 1922(5). Finally, and specific to the issue before us, the legislature itself has mandated that home rule municipal powers are to be "liberally construed in favor of the municipality." 53 Pa.C.S.A. § 2961. Thus, it is with the full panoply of tools of statutory construction that the Court discerns the intent of the General Assembly.

The Home Rule Law provides in relevant part that a "municipality which adopts a home rule charter shall not determine duties, responsibilities or requirements placed upon businesses, occupations and employers ... except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities." 53 Pa.C.S.A. § 2962(f). The Majority simply looks to "the plain language of the statute and our review of prior case law" to conclude that the Home Rule Law prohibits home rule municipalities from any regulation of businesses or employers. Majority Opinion at 510, 985 A.2d at 714. Applying this sweeping interpretation to the City of Pittsburgh's Protection of Displaced Contract Workers Ordinance, the Majority concludes that "[t]his is plainly a 'requirement' placed upon the new contractor," and summarily strikes the ordinance. *Id.*

A closer review of Section 2962(f) and of the Home Rule Law, including its origins and purpose, reveals that the Majority's "plain language" approach leads to a result that is both in direct conflict with the manifest intent of the legislature and unreasonable.

The purpose of home rule is the transfer of authority to control certain municipal affairs from the state to the local level and to broaden powers of home rule municipalities in

relation to non-home rule municipalities. Indeed, the Pennsylvania Constitution provides that municipalities that adopt home rule are empowered to exercise any power or function not proscribed by the Constitution, the General Assembly, or its home rule charter. Pa. Const. art. 9, § 2; *see also*, Jonathan M. Kopcsik, *Constitutional Law—Home Rule and Firearms Regulation: Philadelphia's Failed Assault Weapons Ban—Ortiz v. Commonwealth*, 70 Temp. L.Rev. 1055, 1056–57 (1997). Additionally, as noted above, the legislature itself has mandated that home rule municipal powers are to be "liberally construed in favor of the municipality." 53 Pa. C.S.A. § 2961. Thus, the undisputed intent of the General Assembly was for municipalities which have adopted home rule to enjoy not only expansive powers, but broader powers of self government than non-home rule municipalities.

Related thereto, municipalities governed by municipal codes—that is, those that have not adopted home rule—have enacted ordinances that place duties, responsibilities, and requirements on businesses, occupations, and employers. These have been upheld under a municipality's "general welfare" powers, i.e., the exercise of police powers for the promotion of health, safety, comfort, morals, and welfare of the citizens of the municipality. *See Taylor v. Harmony Twp. Bd. of Comm.*, 851 A.2d 1020, 1024–25 (Pa.Cmwlth.2004) (citing *Gambone v. Commonwealth*, 375 Pa. 547, 101 A.2d 634 (1954));[1] *see generally*, Kevin C. Forsythe, *National, State and Local Perspectives on the Regulation of Business Dislocations: Smaller Manufacturers Council v. City of Pittsburgh*, 45 U. Pitt. L.Rev. 439 (1984). Moreover, the General Assembly has recognized these general welfare powers in various municipal codes. *See, e.g.*, 53 P.S. § 23158; 53 P.S. § 37403(60).

---

**1.** As the Majority notes, *Taylor* concerned an ordinance limiting timber harvesting to prevent flooding and landslides, an undeniable determination of the "duties, responsibilities or requirements" for a business. Directly contrary to the Majority's assertion that this somehow shows that non-home rule municipalities "do not have greater power than home rule municipalities," Majority Opinion at 512 n. 12, 985 A.2d at 715 n. 12, it *precisely* illustrates the kind of regulation a non-home rule municipality can engage in which, under the Majority's approach, a home rule municipality could not.

Thus, the result of the Majority's holding barring home rule municipalities from the regulation of businesses and employers is unmistakable: non-home rule municipalities may pass ordinances such as the one at issue herein, while home rule municipalities may not. This anomaly, and fundamental diminution of home rule municipal powers below that enjoyed by non-home rule municipalities, flies in the face of the manifest intent of the General Assembly in enacting the Home Rule Law.

Additionally, the mandate of effectuating the intention of the General Assembly is informed by the ramifications of a particular interpretation, for example, does a particular interpretation lead to a result that is unreasonable or absurd? 1 Pa.C.S.A. § 1922. Furthermore, as noted above, we presume that the General Assembly favors the public interest as against any private interest. 1 Pa.C.S.A. § 1922(5). The Majority's broad reading of the limitations contained in the Home Rule Law now calls into question numerous ordinances enacted by home rule municipalities to protect their citizens. As suggested by Appellants, ordinances relating to licensure and public order are now vulnerable. The specter of striking such ordinances is not only disconcerting, it is unreasonable and contrary to the expressed intention of the legislature.

Based upon the above, I believe that a plain language approach to interpreting Section 2962(f) leads to an unreasonable result and one that is contrary to the manifest intent of the General Assembly in enacting the Home Rule Law. 1 Pa.C.S.A. §§ 1901, 1921(a), 1922(1). Thus, it must be rejected.

Finding the Majority's approach to be untenable, I believe the more nuanced interpretation offered by Appellants, which finds that home rule municipalities may place duties upon businesses and employers, but only if no such duties have been placed upon them by the Commonwealth, to be proper. Under this interpretation of Section 2962(f), home rule municipalities are prohibited from determining duties which have already been imposed by the legislature; they are not barred from all regulation of businesses and employers. This less sweeping interpretation of Section 2962(f) gives life to both the

statutory language and the intent of the General Assembly in granting home rule municipalities greater powers than non-home rule entities. Applying this approach, I would find that the City of Pittsburgh's Protection of Displaced Contract Workers Ordinance was lawfully enacted under the Home Rule Law.

This approach is further supported by other subsections of the Home Rule Law which make concrete that the General Assembly did not intend a total ban on the regulation of businesses and employers because the legislature knew how to expressly prohibit home rule municipalities from acting. For example, with respect to the regulation of firearms, a municipality's power is clear: "A municipality shall not enact any ordinance or take any other action dealing with the regulation of the transfer, ownership, transportation or possession of firearms." 53 Pa.C.S.A. § 2962(g). Likewise, Section 2962(c)(5) provides that a municipality shall not "[e]nact any provision inconsistent with any statute heretofore enacted prior to April 13, 1972, affecting the rights, benefits or working conditions of any employee of a political subdivision of this Commonwealth." 53 Pa.C.S.A. § 2962(c)(5). Thus, these provisions make it plain that, if the General Assembly had intended to prohibit home rule municipalities from enacting ordinances regulating business and employers, it could have done so in clear and express terms as it did in other sections of the Home Rule Law.

Finally, the Majority engrafts an "affirmative duty" requirement onto the Home Rule Law in its attempt to reconcile its decision today with the Commonwealth Court's decision in *Hartman.* The Majority's reconciliation with that decision is both internally inconsistent and unpersuasive. While using a plain language approach to declare the ordinance before us invalid, the Majority then embraces the *Hartman* court's finding that the statute only forbids home rule municipalities from placing "affirmative duties" on businesses and employers. The plain language of the statute, however, makes no such distinction between affirmative and non-affirmative duties. Thus, contrary to its earlier approach, the Majority

reads into the statute a distinction between affirmative and non-affirmative duties that simply is not there.

Furthermore, taking the Majority's analysis by its terms, the Allentown ordinance at issue in *Hartman,* must be considered invalid. Here, the Majority concludes that "Pittsburgh's Ordinance nonetheless purports to prohibit a new contractor from firing or releasing any employees from a prior contractor during a 180–day transition period ... [t]his is plainly a 'requirement' placed upon the new contractor." Majority Opinion at 510, 985 A.2d at 714. Inserting into this analysis the anti-discrimination ordinance at issue in *Hartman,* yields "Allentown's Ordinance nonetheless purports to prohibit a business from denying housing because of an individual's sexual orientation ... [t]his is plainly a requirement placed upon a business." This simple overlay of analysis makes manifest both the illusory distinction between affirmative and non-affirmative duties, as well as the inharmonious reading of the Majority's initial plain language approach and that taken by the Commonwealth Court in *Hartman.* Simply stated, the Home Rule Law, by its terms, makes no distinction between affirmative and non-affirmative duties and the *Hartman* court's approach and the plain language construct employed by the Majority in this case are incongruous.

For these reasons, I respectfully dissent.