IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Apartment Association of      :
Metropolitan Pittsburgh, Inc.     :
                        :
     v.               :  No. 528 C.D. 2018
                        :  ARGUED:  February 12, 2019
The City of Pittsburgh,       :
             Appellant    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION  BY JUDGE CEISLER             FILED:  March 12, 2019


      The City of Pittsburgh (City) appeals from the March 14, 2018 Order of the Court of Common Pleas of Allegheny County (Trial Court), which granted the Motion for Summary Judgment filed by Apartment Association of Metropolitan Pittsburgh, Inc. (Apartment Association) and denied the City's Motion for Judgment on the Pleadings.  For the reasons that follow, we affirm the Trial Court's Order.

## Background

      The City is a home rule municipality governed by the Home Rule Charter and Optional Plans Law (Home Rule Law), 53 Pa. C.S. §§ 2901-2984.[1]  Apartment

---

[1] The City is also a city of the second class under the Second Class City Code, Act of March 7, 1901, P.L. 20, *as amended*, 53 P.S. §§ 23101-23175.  Our Court has explained:

> The adoption of a home rule charter acts to remove a municipality from the operation of the code provisions enumerating the powers of that particular class of municipality. Once a municipality adopts a home rule charter, "it is no longer a city of the second class, a county of the third class, a borough or a township of the first or second class, but a 'home rule municipality' and its 'code' is the [Home Rule Law]."

Association is a non-profit corporation whose members are property owners, managers, and landlords in the business of renting residential properties in the City. Apartment Association's 200-plus members own and/or manage approximately 30,000 residential rental units in the City.

Housing is provided to many low-income tenants in the City through housing subsidies, the most well-known of which is the federal Section 8 Housing Choice Voucher Program (Section 8 Program).[2] According to the Housing Authority of the City of Pittsburgh (Housing Authority), 41% of City residents with housing vouchers return them unused, due in part to their landlords' refusal to accept the vouchers.

In December 2015, the City enacted Ordinance 2015-2062 (Ordinance). The Ordinance amended certain provisions of the City's Code of Ordinances by adding a new protected class based on the source of income used to pay rent. The purpose of the Ordinance was to prevent residential property owners, real estate brokers, and others from denying a person access to housing based on his or her source of income.

Section 1(jj) of the Ordinance provides the following definition of "source of income":

> All lawful sources of income or rental assistance program [sic], including, but not limited to, earned income, child support, alimony, insurance and pension proceeds, and *all forms of public assistance including federal,*

---

*Ziegler v. City of Reading*, 142 A.3d 119, 131 (Pa. Cmwlth. 2016) (internal citations omitted). Nonetheless, "[a]lthough a home rule municipality is not restrained by its former municipal code, it is not prohibited from exercising powers provided thereunder." *Id.*

[2] Housing is subsidized by the federal government pursuant to Section 8 of the United States Housing Act, *as amended*, 42 U.S.C. § 1437f. The Section 8 Program is administered by the United States Department of Housing and Urban Development (HUD). On the local level, the Section 8 Program is administered by the public housing authority.

2

*state and local housing assistance programs. This includes the Section 8 Housing Choice Voucher Program.*

Ordinance § 1(jj) (emphasis added).[3]    Section 2 of the Ordinance states that the following acts shall be unlawful housing practices:

(a) For any owner, real estate broker or any other person to refuse to sell, lease, sublease, rent, assign or otherwise transfer, or to refuse to negotiate for the sale, lease, sublease, rental, assignment or other transfer of, the title, leasehold or other interest in any dwelling to any person, or to represent that any dwelling is not available for inspection, sale, lease, sublease, rental, assignment or other transfer when in fact it is so available, or *otherwise to deny or withhold any dwelling from any person because of . . . source of income . . .* or to discriminate against, segregate or assign quotas to any person or group of persons in connection with the sale, lease, sublease, rental, assignment or other transfer of the title, leasehold, or other interest in any dwelling or dwellings.

(b) For any person, including any owner or real estate broker, to include in the terms, conditions or privileges of any sale, lease, sublease, rental, assignment or other transfer of any dwelling any clause, condition or restriction *discriminating against or requiring any other person to discriminate against, any person in the use or occupancy of such dwelling because of . . . source of income . . .* of the user.

(c) For any person, including any owner or real estate broker, to *discriminate in the furnishing of any facilities or services for any dwelling because of . . . source of income . . .* of the user.

. . .

(f) For any real estate broker or real estate salesperson or agent, or any other person for business or economic purposes, to induce, directly or indirectly, or to attempt to induce directly or indirectly, the sale or rental or the listing for sale or rental, of any dwelling *by representing that a change has occurred or will or may occur regarding the entry or prospective entry into the neighborhood of a person or persons of a particular . . . source of income . . . .*

---

[3] *See* Stipulations of Fact, 10/13/17, Ex. A.

Ordinance § 2 (a)-(c), (f) (emphasis added).

On January 15, 2016, Apartment Association filed a Complaint for Equitable Relief and Request for Declaratory Judgment against the City. In its Complaint, Apartment Association alleged that the Ordinance violated both the Home Rule Law and the Pennsylvania Constitution. It also sought a preliminary injunction to stay the enforcement of the Ordinance. On February 9, 2016, the Trial Court issued an Order staying the implementation and enforcement of the Ordinance until further order of the Trial Court.

On June 29, 2017, the City filed an Answer and New Matter, to which Apartment Association replied on July 10, 2017. On October 13, 2017, the parties filed Stipulations of Fact with the Trial Court.

On November 17, 2017, the City filed a Motion for Judgment on the Pleadings, and Apartment Association filed a Motion for Summary Judgment. The Trial Court heard argument on the Motions on January 25, 2018. Thereafter, on March 14, 2018, the Trial Court granted Apartment Association's Motion, denied the City's Motion, and declared the Ordinance invalid and unenforceable. The Trial Court concluded:

> The City's Ordinance makes participation in the Section 8 [P]rogram mandatory. Landlords will be forced to comply with the numerous and often burdensome requirements of the Section 8 [P]rogram. For example, they will have to use the Housing Authority's model lease and/or submit a preferred lease to the Housing Authority for pre[-]approval. That lease must include word[-]for[-]word provisions of the HUD Tenancy Addendum. They will be prohibited from including notice of termination waivers in leases and must accept a mandatory "cure period" of five days in advance of issuing a Notice to Quit. Landlords will be required to accept "reasonable rent" obligations as established by the Housing Authority and provide at least 60 days' notice of any change in rent amounts. They will have to obtain approval from the Housing Authority to raise a tenant's rent. Finally, landlords will be forced to agree to month-to-month leases subsequent to an initial one[-]year lease term. Neither Pennsylvania common law nor [The] Landlord and Tenant Act of 1951[,

4

Act of April 6, 1951, P.L. 69, *as amended*, 68 P.S. §§ 250.101-250.602,] contain[s] such requirements.

There is no genuine issue of material fact as to whether the . . . Ordinance places affirmative duties and requirements on residential property owners, landlords and others in violation of the [Home Rule Law]. Pennsylvania [c]ourts have consistently held that home rule municipalities must comply with the limitations of Section 2962(f) of the [Home Rule Law, 53 Pa. C.S. § 2962(f)].[4]

Trial Ct. Op., 3/14/18, at 4-5 (unpaginated). The City now appeals to this Court.[5]

## Issue

Did the City have authority to enact the Ordinance to protect its residents from being denied access to rental housing based on their sources of income?

## Parties' Arguments on Appeal

### 1. The City

The City asserts that it was well within its authority in enacting the Ordinance to combat discrimination against low-income City residents. As a home rule municipality, the City determined that discrimination in rental housing based on a person's source of income has become a proxy for discrimination on the basis of race, national origin, and familial status. The City created the Ordinance to protect its

---

[4] Section 2962(f) of the Home Rule Law states:

A municipality which adopts a home rule charter *shall not determine duties, responsibilities or requirements placed upon businesses, occupations and employers,* including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment, *except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities.* This subsection shall not be construed as a limitation in fixing rates of taxation on permissible subjects of taxation.

53 Pa. C.S. § 2962(f) (emphasis added).

[5] Our standard of review on appeal is whether the Trial Court committed an error of law or abused its discretion. *Hartman v. City of Allentown*, 880 A.2d 737, 741 (Pa. Cmwlth. 2005).

residents from discrimination and to ensure the availability of affordable, safe housing for all residents. The Pennsylvania Constitution establishes its authority to enact the Ordinance, as it expressly provides that "[a] municipality which has a home rule charter *may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time*." Pa. Const. art. IX, § 2 (emphasis added).

The City also contends that the Trial Court erroneously relied on the exception in Section 2962(f) of the Home Rule Law. This Court has held that Section 2962(f) of the Home Rule Law prohibits the placement of "affirmative duties" on businesses. *Hartman v. City of Allentown*, 880 A.2d 737, 746 (Pa. Cmwlth. 2005). Here, the Ordinance simply prohibits discrimination based on a potential tenant's source of income; it does not place any affirmative duties on businesses.

Moreover, the City contends that Section 2962(f) of the Home Rule Law does not bar a municipality's regulation of businesses where such regulation is within its generally applicable police powers; anti-discrimination laws are clearly within those police powers. The City asserts that without the ability to carry out its police powers, a home rule municipality would have substantially less power than its non-home rule counterparts, which contravenes the purpose of home rule.

## 2. Apartment Association

Apartment Association argues that the City exceeded its authority under the Home Rule Law. Section 2962(f) of the Home Rule Law expressly limits the City's authority to regulate businesses, prohibiting a municipality from placing "duties, responsibilities or requirements . . . upon businesses, occupations and employers." 53 Pa. C.S. § 2962(f). The Ordinance in this case prohibits residential landlords from denying a person access to housing based on his or her source of income. As defined in the Ordinance, "source of income" specifically includes housing subsidies under the

6

Section 8 Program. Apartment Association asserts that before enactment of the Ordinance, residential landlords in the City were not required to participate in the Section 8 Program. Now, their participation in the Section 8 Program is mandatory. To comply with the Ordinance, City landlords must comply with the numerous requirements and federal regulations governing the Section 8 Program. According to Apartment Association, Pennsylvania courts have consistently invoked Section 2962(f) of the Home Rule Law to invalidate ordinances where a municipality has attempted to place duties and obligations on private businesses.

**Analysis**

Under the Home Rule Law, "[a] municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter." 53 Pa. C.S. § 2961. As the City points out, this provision must be liberally construed in the municipality's favor. *See* 53 Pa. C.S. § 2961 ("All grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, *shall be liberally construed in favor of the municipality*.") (emphasis added). Our Court has recognized that "[t]he essential principle underlying home rule is the transfer of authority to control certain municipal affairs from the state to the local level. . . . This transference results in home rule municipalities having *broader powers* of self[-]government than non-home rule municipalities." *Hartman*, 880 A.2d at 742.

Notwithstanding a home rule municipality's broad powers, the Home Rule Law imposes a statutory limitation on its authority to enact certain types of legislation. Specifically, Section 2962(f) of the Home Rule Law prohibits a home rule municipality from "determin[ing] duties, responsibilities or requirements placed upon businesses, occupations and employers." 53 Pa. C.S. § 2962(f).

7

Pennsylvania appellate courts have consistently struck down municipal ordinances that violate this prohibition against the regulation of private businesses. For example, in *Building Owners & Managers Association v. City of Pittsburgh*, 985 A.2d 711, 712 (Pa. 2009), the City passed an ordinance requiring employers with new service contracts to retain the employees of prior contractors for at least 180 days. On appeal, the Pennsylvania Supreme Court concluded that the ordinance was invalid because it directly regulated the contractors in violation of the Home Rule Law. *Id.* at 716. The Supreme Court determined that "the [o]rdinance exemplifies the very essence of the invasive regulations that Section 2962(f) [of the Home Rule Law] is designed to prevent and, indeed, strictly prohibits." *Id.* at 715-16. Therefore, the Supreme Court held that "[b]ecause the [o]rdinance imposes an affirmative duty upon contractors by requiring them to keep employees of prior contractors for a transitional period, the [o]rdinance reaches beyond the powers granted to the City . . . as a home rule municipality in direct violation of Section 2962(f)." *Id.* at 716.

Similarly, in *Smaller Manufacturers Council v. Council of City of Pittsburgh*, 485 A.2d 73, 74 (Pa. Cmwlth. 1984), the City passed an ordinance requiring manufacturing plant owners to notify the City's Bureau of Business Security of any plans to close, relocate, or reduce operations if such actions would affect more than 15% of their employees. Although the purpose of the ordinance – *i.e.*, to reduce the economic disruption caused by plant closings – was an important public policy concern, this Court nonetheless invalidated the ordinance because it unlawfully determined the duties, responsibilities, and requirements of businesses in violation of Section 2962(f) of the Home Rule Law. *Id.* at 77. We concluded that the ordinance's requirement that businesses notify a City-created Bureau if a business decision was

8

made went directly to the heart of business management and "fl[ew] in the face of the express language" of the Home Rule Law. *Id.*[6]

The City attempts to distinguish *Building Owners* and *Smaller* and instead relies on *Hartman* to support its position on appeal. The City asserts that, like the anti-discrimination ordinance at issue in *Hartman*, the instant Ordinance "does not require or mandate anything on businesses" but "simply prohibits discrimination." City's Br. at 15 (emphasis omitted); City's Reply Br. at 1. We disagree.

In *Hartman*, the City of Allentown adopted an ordinance that added sexual orientation and gender identity to a list of prohibited bases of discrimination in employment, housing, and public accommodations. 880 A.2d at 740. A group of landlords challenged the ordinance, claiming that it violated Section 2962(f) of the Home Rule Law as an improper regulation of private businesses. *Id.* The trial court found that the ordinance violated Section 2962(f) because it placed duties and responsibilities on businesses. *Id.* at 741. The trial court also found that no Pennsylvania statute expressly authorized municipal legislation prohibiting discrimination on the basis of sexual orientation or gender identity. *Id.*

On appeal, this Court reversed the trial court and upheld the ordinance. We began by analyzing "how broadly [Section 2962(f)'s] limitation on home rule authority should be interpreted." *Id.* at 742. We examined the use of the phrase "regulation of business" in other, similar statutes regulating non-home rule municipalities and found that those "statutes are quite specific and focus on or limit the affirmative duties that non-home rule municipalities can place on businesses and employers." *Id.* at 745. Thus, we concluded that "the phrase 'regulation of business' [in Section 2962(f) of the

---

[6] The *Smaller* Court applied a prior provision of the Home Rule Law, which was substantially similar to Section 2962(f) of the present Home Rule Law.

9

Home Rule Law] means *affirmative duties* being placed on businesses." *Id.* at 746 (emphasis added).

Next, we considered the interplay between the City of Allentown's broad authority under the Home Rule Law and "its police power, which is its fundamental authority to protect the health, safety and welfare of its citizens." *Id.* at 742-43. We noted that a municipality "with subordinate powers to the state may 'make such additional regulations in aid and *furtherance of the purpose of the general law* as may seem appropriate to the *necessities of the particular locality* and which are not in themselves unreasonable.'" *Id.* at 744 (citation omitted). We determined that "the City of Allentown duly enacted a regulation under its police powers to protect its citizens." *Id.*

Further, this Court distinguished the City of Allentown's anti-discrimination ordinance from the ordinance at issue in *Smaller*, as follows:

> We agree with Allentown that the ordinance in *Smaller* was designed and intended to place affirmative duties of business management on businesses in Pittsburgh; *that is far different from the [o]rdinance at issue here*. The requirements in the *Smaller* ordinance, that employers or businesses notify a City-created Bureau if a "business decision" was made (in order for the Bureau to decide if an employer could close, leave the city limits, or reduce its work force), *go to the heart of business management and usurp the role of management. However, in this case, there is no evidence that Allentown designed or intended to impose affirmative duties of business management on businesses; rather, the [o]rdinance is intended to protect Allentown's citizens from discrimination.*

*Id.* at 746-47 (internal footnote omitted) (emphasis added). Therefore, we held that the ordinance was a valid exercise of the City of Allentown's police powers and did not violate Section 2962(f) of the Home Rule Law. *Id.* at 747.

10

We conclude that the Ordinance at issue here is more akin to the *Smaller* ordinance than the *Hartman* ordinance. While it is true that anti-discrimination ordinances are a valid exercise of a municipality's police powers, the Ordinance here, unlike the *Hartman* ordinance, does more than just ban discrimination against certain protected classes of people. *See Building Owners*, 985 A.2d at 715 (noting that the *Hartman* ordinance "simply disallowed discrimination based upon sexual orientation and gender identity generally"). By defining "source of income" to include Section 8 Program subsidies, the Ordinance in this case necessarily mandates that all residential landlords in the City comply with the federal Section 8 Program requirements, when previously their participation in the Section 8 Program was voluntary. That is clearly an affirmative obligation and more invasive to the operation of a rental business than the type of general anti-discrimination ordinance at issue in *Hartman*. Like the ordinances in *Building Owners* and *Smaller*, the requirements of the City's Ordinance "go to the heart of business management and usurp the role of management." *Hartman*, 880 A.2d at 746. This result is expressly prohibited by Section 2962(f) of the Home Rule Law.

## Conclusion

We recognize that the City's enactment of the Ordinance was well-intended. However, implementation of the Ordinance will require all residential landlords to significantly alter their business practices in order to accommodate Section 8 Program participants. Contrary to the City's contention, the Ordinance does, in fact, place affirmative "duties, responsibilities or requirements" on private businesses and employers. *See* Trial Ct. Op., 3/14/18, at 4-5 (outlining a potential lessor's Section 8 Program requirements). Therefore, we agree with the Trial Court that the City violated Section 2962(f) of the Home Rule Law in enacting the Ordinance.

11

Accordingly, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Apartment Association of       :
Metropolitan Pittsburgh, Inc.     :
                                 :
       v.                    :   No. 528 C.D. 2018
                                   :
The City of Pittsburgh,        :
               Appellant     :

## O R D E R

AND NOW, this 12th day of March, 2019, the Order of the Court of Common Pleas of Allegheny County, entered on March 14, 2018, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge